**COFACE, Plaintiff,**

v.

**OPTIQUE DU MONDE, LTD., Norman Edidin, and Edidin Associates, Defendants.**

No. 80 Civ. 2384 (WCC).

United States District Court, S. D. New York.

Dec. 17, 1980.

Bernstein & MacCarthy, New York City, for plaintiff; Stephen D. Kramer, New York City, of counsel.

Sperling, Slater & Spitz, Chicago, Ill., for defendants Norman Edidin and Edidin Associates; Bruce S. Sperling, Frederic A. Leslie, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Before the Court are motions by defendants Norman Edidin and Edidin Associates ("the Edidins") to dismiss the claims against them for failure to state a claim upon which relief may be granted, Rule 12(b)(6), F.R. Civ.P., and for improper venue, Rule 12(b)(3), F.R.Civ.P. Alternatively, the Edidins seek transfer of the claims against them to the United States District Court for the Northern District of Illinois, either

because venue does not lie in this Court, 28 U.S.C. § 1406(a), or because the Illinois forum would better serve the convenience of parties and witnesses and the interests of justice, 28 U.S.C. § 1404(a).

*BACKGROUND*

The claims in this litigation arise out of the financial difficulties of defendant Optique du Monde, Ltd. ("Optique"), a Delaware corporation formerly doing business in Connecticut. At about the time this complaint was filed, Optique filed a petition in bankruptcy in the United States District Court for the District of Connecticut, staying all proceedings against it. All of the relevant occurrences leading to the filing of this action preceded the Optique bankruptcy petition.

Optique's former business included the purchase and redistribution of eyewear. In connection with this aspect of its business, by June 6, 1979 Optique had become indebted to certain eyewear manufacturers located in France in the amount of approximately $2,000,000 ("the Debt").

Plaintiff Coface is an agency of the Government of the Republic of France, with an office in Paris, France. Coface is responsible for promoting foreign trade, and to that end insures the receivables of certain French manufacturers. Apparently as a result of such a relationship with Optique's French creditors, Coface acquired their interests in the Debt owed by Optique.

Defendant Norman Edidin is a principal shareholder of Optique, who resides and maintains a place of business solely within the Northern District of Illinois. Edidin Associates is a limited partnership also located solely within the Northern District of Illinois.

In order to facilitate Optique's payment of its debt to Coface, Coface, Optique and the Edidins entered into an agreement on June 6, 1979, the significant provisions of which are here summarized:

(1) a schedule was drawn up whereby Optique agreed to repay the Debt to Coface in monthly installments of $100,000;

(2) Coface agreed to insure the receivables of the French manufacturers for eyewear supplied to Optique in the future up to an outstanding balance of $220,000 ("New Orders"). Optique was to make payment on New Orders within 60 days of shipment; and

(3) the Edidins signed the agreement as guarantors of Optique's obligations to pay the Debt and to pay for New Orders, up to a maximum combined balance of $600,000.

On January 2, 1980, the parties amended the agreement, essentially increasing Optique's monthly payments on the Debt to $150,000, increasing Optique's credit on New Orders insured by Coface to $450,000, and increasing the Edidins' exposure as guarantors to a maximum of $830,000.

On March 26, 1980, the parties executed a new agreement ("Agreement"), drafted by Coface, which is the subject of the disputes here. The preamble to the Agreement acknowledges the existence of the June 6, 1979 Agreement, as amended on January 2, 1980, and recites that "rather than enter into a secondary amendatory agreement all parties hereto have agreed to execute a new agreement containing the latest terms and conditions agreed to between them." The Agreement acknowledges that, as a result of prior payments from Optique to Coface, the amount of the Debt had been reduced to approximately $1,500,000, and sets forth a revised payment schedule, with $25,000 due on the 15th of each month from March 1980 through June 1980, and $100,000 due on the 15th of each month from July 1980 until satisfaction of the Debt, with interest, in September 1981. The provisions governing New Orders and the liability of the Edidins as guarantors are virtually identical to corresponding provisions in the prior agreement, as amended.

The Agreement contains two additional procedural provisions relevant to the instant motion. Paragraph 11 provides that the "Agreement is made in the State of New York and shall be governed by and construed and interpreted in accordance with the laws of the State of New York." And Paragraph 12 provides in pertinent

part that Optique and the Edidins "consent to the jurisdiction of the State and Federal courts sitting in New York in any action arising out of or connected in any way with this Agreement . . . ."

On April 4, 1980, Coface gave notice to Optique and the Edidins, pursuant to the "notice of default" provisions of the Agreement, that Optique had failed to make payment within 60 days of shipment of a New Order.

On April 23, 1980, Coface filed its complaint, alleging, *inter alia* :

(1) that Optique has made no payment on the Debt after the $25,000 payment due March 15, 1980;

(2) that Optique has failed to make payments for certain New Orders within 60 days of shipment, and that the Edidins have failed to cure the default after receipt of notice; and

(3) that Optique and the Edidins entered into the Agreement knowing that Optique was unable to make the requisite payments on the Debt and for New Orders, and failed to advise Coface of such.

Counts One and Two of the complaint seek damages from Optique and the Edidins, respectively, for breach of the Agreement. Count Three of the complaint seeks damages from both Optique and the Edidins, apparently on a fraud theory.

## DISCUSSION

### I. Motion to Dismiss Count Two for Failure to State a Claim

Count Two of the complaint alleges breach of contract by the Edidins for failure to cure, after receipt of notice, the default of Optique as to payments within 60 days of shipment of New Orders.[1] In support of their motion, the Edidins argue that Optique could not be in default until 60 days after shipment; that the Agreement was executed on March 26, 1980; that therefore no payments could be due until at least 60 days therefrom, or May 26; and that therefore Optique could not have been in default when notice was sent (April 4) or when the complaint was filed (April 23). In response, Coface has contended that the New Orders sued upon were delivered under the prior agreements and that 60 days had in fact run since shipment without payment by Optique; that the Agreement, by reference to the prior agreements, incorporates Optique's obligations to pay for New Orders under the prior agreements; and that a reference in the preamble of the Agreement purportedly defining New Orders as orders by Optique during the period that the Debt is being repaid, coupled with the recognition in Paragraph 2 that payments against the Debt commenced in September 1979, establish that, under the Agreement, Optique's obligation of payment within 60 days of shipment of New Orders applies to New Orders predating the Agreement as well as those which were to follow it. The Edidins in their reply argue that the preamble provision, quoted above, which recites that the parties have chosen to execute a new Agreement rather than again amending the prior agreements, precludes any interpretation that obligations under the prior agreements are incorporated into the Agreement; and that the provision of the Agreement, setting forth Coface's insurance of Optique's credit for New Orders and Optique's obligation to pay within 60 days of shipment, is prefaced with the phrase "(f)rom the date hereof," precluding any interpretation that the provision applies to preexisting New Orders.

The problem with the Edidins' argument is that it proves too much. If the Agreement does not incorporate by reference any aspect of the prior agreements, and if Optique's obligation to pay for New Orders within 60 days of shipment applies only to post-Agreement New Orders, then Coface has not only waived its right to

---

1. While Paragraph 11 pleads a default by Optique in its failure to make its April 15 payment against the Debt, Coface has apparently not sent notice of this default to the Edidins and does not rely upon this incident for its breach of contract claim against the Edidins because, under the Agreement, the initial notification of the alleged default as to New Orders is sufficient to activate the guarantee in full.

payment within 60 days for pre-March 26, 1980 New Orders, but has also forfeited its right to *any* payment for such New Orders. In other words, if the Agreement constitutes the sole contract and only requires payment for New Orders "from the date hereof," then there is no requirement of payment for pre-Agreement New Orders, a result which is at least arguably an unlikely measure of the true intent of the parties, especially since the Agreement does not include any reference to Coface's relinquishment of entitlement to such payments.

The Edidins argue that the prior agreements, as parol evidence, cannot be considered because the Agreement clearly reflects the intent of the parties. However, the Court cannot agree with the Edidins that the Agreement unambiguously supports their construction. A provision in the preamble to the Agreement makes specific reference to the prior agreements. The subsequent provision, noting that the parties have chosen to execute a new Agreement rather than re-amending the prior agreements, does not necessarily preclude a construction that the Agreement is to govern prospectively without voiding preexisting obligations not addressed in the Agreement. A similar interpretation is not implausible as to Paragraph 6, governing New Orders after March 26, 1980, especially in light of the provision in the preamble recognizing the existence of New Orders prior to March 26, 1980.

Of course, the Court here is not suggesting the superiority of either party's construction of the Agreement, but merely that the Edidin's interpretation is not, as a matter of law, exclusive. The Court concludes that, as to the contract claim regarding New Orders, the Edidins have not demonstrated that Coface "can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Accordingly, the Edidins' motion to dismiss for failure to state a claim is denied as to Count Two.

## II. *Motion to Dismiss Count Three for Failure to State a Claim*

Count Three of the complaint, insofar as it purports to state a claim against the Edidins, alleges that the Edidins at the time of the Agreement, by virtue of their relationship with Optique, knew that Optique would be financially unable to perform its obligations under the Agreement, and that nondisclosure of this information to Coface constituted fraud. The Edidins have advanced three independent grounds in support of their motion:

(1) the allegations of fraud are insufficiently particular when measured against the requirements of Rule 9(b), F.R.Civ.P.;

(2) the allegations of nondisclosure do not state a claim of fraud under New York law; and

(3) Coface suffered no injury as a result of the alleged fraud. The Court need discuss only the second of these, as consideration thereof mandates dismissal of Coface's claim of fraud against the Edidins.

■ Where a claim of fraud is based not upon actual misrepresentation but rather upon nondisclosure, there must be shown an obligation to disclose arising from some fiduciary or confidential relationship. *E. g., Amend v. Hurley*, 293 N.Y. 587, 596, 59 N.E.2d 416 (1944). As the cases cited by the Edidins illustrate, a contractual relationship does not trigger any disclosure obligation, at least as to the fact of insolvency.

> "Under the law of New York, one who enters into a contract without disclosing a known condition of insolvency does not thereby become chargeable with fraud."

*Archawski v. Hanioti*, 239 F.2d 806, 812 (2d Cir. 1956). The allegations of nondisclosure here consequently do not state a claim of fraud.

In its effort to resist the motion, Coface argues that the alleged nondisclosure by the Edidins does constitute fraud under New York law, and relies upon three decisions: *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973), *In re Tucker Corp.*, 256 F.2d 808 (7th Cir. 1958), and *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143

N.E.2d 906 (Ct.Appeals 1957). None of these cases supports Coface's position. *Walling* involved a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934 in which plaintiff alleged that defendant entered into a securities transaction with the intent not to perform its obligations. *Tucker* and *Sabo* both involved claims of misrepresentations by defendants which induced plaintiffs to enter into contracts. None of these cases involved a claim of fraud under New York law for nondisclosure of insolvency by a party to a contract.

Furthermore, Count Three alleges that the Edidins failed to advise Coface of the impending insolvency, not of themselves, but of Optique. Whatever the obligations of contracting parties to disclose facts about themselves, Coface's claim against the Edidins would require a determination that contracting parties also implicitly assume the extraordinary fiduciary obligation to disclose to each other facts about third parties to their agreements, a proposition for which Coface has offered the Court no support.

For these reasons, the motion of the Edidins to dismiss Count Three as against them for failure to state a claim is granted.

### III. *Motions to Transfer*

The Edidins argue that venue lies exclusively in the Northern District of Illinois and move to dismiss for improper venue or to transfer to the Illinois forum pursuant to 28 U.S.C. § 1406(a). Alternatively, if the Court determines that proper venue exists both in the New York and Illinois courts, the Edidins move for transfer for the convenience of the parties and witnesses and in the interests of justice, pursuant to 28 U.S.C. § 1404(a). Coface in response argues that venue properly lies in this District, and also points to Paragraph 12 of the Agreement, quoted above, which Coface contends establishes that this action may only be litigated in a New York forum. The Edidins argue in reply that Paragraph 12 speaks only to jurisdiction, not venue, and that in any event it is not an agreement to litigate *exclusively* in New York.

Setting aside for one moment the impact of Paragraph 12, it is manifest that in the absence of a controlling contractual provision, venue in the instant case is proper in the Illinois forum but not in the New York forum. Pursuant to 28 U.S.C. § 1391, venue in this case properly lies in the district where the claim arose. Determining the district in which a claim arose for venue purposes requires an examination of the weight of defendant's contacts regarding the claim in the various districts concerned. See *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886 (S.D.N.Y.1974). Applying this test here, it is clear that the claim arose in the Northern District of Illinois. The Edidins both reside in the Illinois district. It is in that district where the Edidins were allegedly obliged to perform their obligations under the Agreement; *i. e.*, to cure Optique's default by forwarding payments to the French eyewear manufacturers. Consequently, it is in that district where the Edidins allegedly breached the Agreement.

This, however, does not end the inquiry, for it may be argued that the claim arose both in the Illinois district and here in New York. As to this possibility, the Supreme Court has most recently provided guidance by its decision in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Great Western*, the Court declined to decide whether Section 1391 requires that a claim arise in only one district, but warned that it is "the unusual case in which it is not clear that the claim arose in only one specific district." *Id.* at 185, 99 S.Ct. at 2718. For venue purposes, a claim arises in more than one district only when two (or more) districts "with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." *Id.*

Applying these principles to this case, it is apparent that the claim arose only in the Northern District of Illinois, and not also in

this district. The only facts that Coface can point to in order to establish a nexus with New York are that the Agreement was executed in New York and that payments against the Debt were to be made through a New York bank. The Edidins counter, with support from the record, that in fact they did not execute the Agreement in New York, but by use of a facsimile transmitting device, and that payments for New Orders, the subject of the contract claim, were to be made directly to the French eyewear manufacturers and not through a New York bank. In any event, these facts do not, under *Great Western*, establish New York as an equally plausible situs of the claim.

█ Consequently, if venue does lie in this district, it must be as a result of Paragraph 12. The Edidins' initial position here is that Paragraph 12 speaks only to jurisdiction, and not also to venue, and that consequently there has been no consent to waive any objections as to venue in New York. The Court cannot agree. The purpose of such a forum selection clause is, at the very least, to provide for a forum in which any anticipated litigation might be prosecuted. See *Wiesenberger Services, Inc. v. Response Analysis Corp.*, 365 F.Supp. 258 (S.D.N.Y. 1973); see also *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964). To consent to personal jurisdiction in the New York courts without also consenting to venue would thus be a meaningless exercise, at least in this case where each party reasonably should have anticipated that venue in this forum would be improper but for such a forum selection clause. The Court concludes that the consent to "jurisdiction" in Paragraph 12, if it is to be read meaningfully, must be construed as a consent to both personal jurisdiction and venue.

In anticipation of such a ruling, the Edidins argue in the alternative that Paragraph 12 is not an agreement to litigate exclusively in a New York forum. On this point the Court agrees, as have other courts which have considered similar contractual consents to jurisdiction.

In *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974), the court considered the following contractual provision:

"This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."

The parties in *Keaty* advanced the same conflicting interpretations as those proffered by Coface and the Edidins here. The court in *Keaty* found both constructions reasonable, invoked the principle that ambiguous contract language should be construed against the author of the contract,[2] and adopted the construction advanced here by the Edidins.

Similarly, in *First National City Bank v. Nanz, Inc.*, 437 F.Supp. 184 (S.D.N.Y. 1975), the relevant contract provision provided that "the Supreme Court of the State of New York within any county of the City of New York shall have jurisdiction of any dispute." The court, following *Keaty, supra*, held the provision to be a consent to jurisdiction clause and not a mandatory forum selection clause.

Finally, in *Wiesenberger Services, Inc. v. Response Analysis Corp.*, 365 F.Supp. 258 (S.D.N.Y. 1973), the parties agreed to "remain subject to the *in personam* jurisdiction of the courts of the State of New York with regard to this agreement." The court found "that the parties by the quoted language merely intended to solve the problem of obtaining jurisdiction over each other in the event of a dispute, and did not intend to specify the forum in which such jurisdiction could be invoked." *Id.* at 258.

█ These decisions, as well as the language of Paragraph 12, compel the conclusion that the Edidins have not agreed to New York as the exclusive forum for litigation of this action. In contrast, the cases

---

**2.** This rule of construction applies under New York law, see, *e. g., 67 Wall Street Co. v. Franklin National Bank*, 37 N.Y.2d 245, 371 N.Y.S.2d 915, 918, 333 N.E.2d 184, 186 (Ct. Appeals 1975), and thus Paragraph 12 must be construed against Coface.

relied upon by Coface are clearly distinguishable.

In *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), the question at issue here was not before the Court, and dictum as to the purpose of forum selection clauses is not dispositive of the question under discussion. In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the clause recognized by the Court as a *prima facie* mandatory forum selection clause provided that "(a)ny dispute arising must be treated before the London Court of Justice;" the Court's decision as to this unmistakably certain provision is not persuasive as to the language here, which at best ambiguously supports Coface's position. See *Keaty, supra*. And in *National Equipment Rental, Ltd. v. Sanders*, 271 F.Supp. 756 (E.D.N.Y. 1967), the court found the following contract provision to be a mandatory forum selection clause: [3]

> " . . . as part of the consideration for the lessor's executing this lease, lessee hereby agrees that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in courts having situs within the state of New York, and lessee hereby consents to the jurisdiction of any local state or federal court located within the state of New York . . . ."

Such language clearly goes far beyond the mere jurisdictional consent provisions in *Keaty, First National City Bank, Weisenberger Services* and this case, and again a decision as to such language is neither controlling nor persuasive here.

Paragraph 12 thus provides that this district is a permissible forum for Coface's claim against the Edidins, but does not preclude litigation of this action in the Northern District of Illinois. Consequently, the ultimate resolution of the Edidins' motion to transfer turns on the application of 28 U.S.C. § 1404(a), which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ Plainly Coface's claim against the Edidins could have been brought in the Northern District of Illinois, since that court would have personal jurisdiction over the Edidins and venue would be proper. Thus, this Court must determine whether the convenience of the parties and witnesses and the interests of justice would be served by such a transfer. Although "a lesser showing of inconvenience" is required for a Section 1404(a) transfer than for a dismissal under the earlier doctrine of *forum non conveniens, Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955), a plaintiff's choice of forum is still entitled to considerable weight. *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439 (2d Cir. 1966). Thus, a plaintiff's choice of forum will not be disturbed unless the defendant shows that "the proposed transferee court is a more convenient one and that the interests of justice would be better served there." *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y. 1967). See also *First National City Bank v. Nanz, Inc.*, 437 F.Supp. 184, 188 (S.D.N.Y. 1975); *Scheinbart v. Certain-Teed Products Corp.*, 367 F.Supp. 707 (S.D.N.Y. 1973).

■ The factors that should be considered by a court in deciding a Section 1404 motion include:

"(1) convenience of the parties; (2) convenience of fact witnesses; (3) availability of process to compel reluctant witnesses; (4) the cost of obtaining the presence of witnesses; (5) access to proof; (6) calendar congestion; (7) where the relevant events took place; and (8) the interests of justice in general."

*Car Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 85 (N.D.N.Y. 1977). Apply-

---

3. The court noted that even with such a clause controlling, the court is not precluded from transferring under Sections 1404 or 1406 if the interests of justice so require.

ing these criteria to the instant case, the Court concludes that the Edidins have met their burden of clearly demonstrating the superiority of the Illinois forum.

### 1. Convenience of the Parties

Coface is a French-based organization for whom either the New York or Illinois forum would be foreign. The Edidins are located in the Northern District of Illinois.

Thus, consideration of this factor favors the Illinois forum.

### 2. Convenience of the Witnesses

As to this factor, the parties have submitted extensive witness lists which have been transparently padded for purposes of this motion. Coface has listed eight prospective witnesses, summarized as follows:

| Witness | Residence | Position | Subject of Testimony |
|---|---|---|---|
| Ian J. Baines | Connecticut | former Optique officer | Optique's efforts to defraud its creditors. |
| Michael R. Foster | Connecticut | former Optique officer | 1. events of default under Agreement as shown by books and records. 2. Optique's efforts to defraud its creditors. |
| John Fox | Connecticut | former Optique officer | 1. execution of contract by Optique in Connecticut. 2. understanding of parties of terms of Agreement. 3. Optique's efforts to defraud creditors. |
| Jean-Pierre Gachelin | New York | Commercial Counsel, Embassy of France | 1. understanding of parties of terms of Agreement. 2. power of attorney of Coface to Kevin MacCarthy, Esq. |
| John Judge | Connecticut | former Optique officer | events of default under Agreement as shown by books and records. |
| Kevin MacCarthy | New York | attorney for Coface | 1. execution of contract by Coface in New York. 2. understanding of parties of terms of Agreement. 3. notification to defendants of default per instructions from Coface. |
| Christine Mouterde | New York | assistant Commercial Counsel, Embassy of France | 1. execution of contract by Coface in New York. 2. understanding of parties of terms of Agreement. 3. power of attorney of Coface to Kevin MacCarthy, Esq. 4. notification of default per instructions from Coface. |
| Howard M. Bergtraum | New York | former attorney of Optique | understanding of parties of terms of Agreement. |

A review of the proposed testimony of these individuals reveals six general categories: (1) Optique's efforts to defraud its creditors, (2) the events of default under the Agreement as shown by certain books and records, (3) the execution of the Agreement by Optique and Coface in Connecticut and New York, respectively, (4) the understanding of the parties as to the terms of the Agreement, (5) the power of attorney of Coface given to Kevin MacCarthy, and (6) the notices of default. From the previous discussion, it is manifest that only the fourth of these—the understanding of the parties as to the terms of the Agreement—is truly relevant to the issue to be litigated between Coface and the Edidins.

■■■ As detailed above, the parties differ only as to whether the Agreement incorporated preexisting obligations incurred under the prior agreements. Consequently, testimony as to the execution of the Agreement, the power of attorney, the events of default and notice thereof would be largely immaterial, see *Computer Horizons Corp. v. Knauer*, 483 F.Supp. 1272, 1273 (S.D.N.Y. 1980), especially since any evidence of such would, by Coface's own admission, come from documentary submissions, and there is no explanation as to what additional enlightenment testimony would produce.[4] Finally, testimony as to Optique's efforts to defraud its creditors relates only to Coface's claim of fraud against the Edidins, which the Court has dismissed, and is obviously unrelated to Coface's remaining contract claim against the Edidins.

Viewed in this light, only five of those on Coface's list—Fox, Gachelin, MacCarthy, Mouterde and Bergtraum—are proffered as witnesses who will testify as to the relevant issue. And even as to these, the materiality of their testimony has been strenuously challenged by the Edidins. As to the witness MacCarthy, who is also Coface's attorney in this action, the Edidins argue that he has no first-hand knowledge of the parties'

understanding of the Agreement, and that he admits as much by continuing to represent Coface when to do so would run afoul of the ABA Code of Professional Responsibility, DR 5–102(A), if in fact he is to be a witness at trial. In any event, the convenience of attorneys is irrelevant under Section 1404(a), *e. g., Xerox Corp. v. Litton Industries, Inc.*, 353 F.Supp. 412, 415–16 (S.D.N.Y. 1973), and there is no additional inconvenience to Coface if its attorney, litigating this action in Illinois, chooses also to testify there.

As to the two purported witnesses from the French embassy—Gachelin and Mouterde—the Edidins argue, without rebuttal from Coface, that these individuals are not employees of Coface and that they had no contact with the events surrounding this action other than to forward materials from Coface in France to Coface's New York attorney. The Edidins similarly deny that Fox has any personal knowledge as to the contested issue here. Coface has offered no explanation as to how these witnesses acquired any personal knowledge regarding the intent of the contracting parties. Contrastingly, Coface offers the witness Bergtraum as the attorney who negotiated the agreement on behalf of Optique and who will testify as to the parties' intent to incorporate the prior agreements into the Agreement.

Upon a review of this record, the Court concludes that among Coface's purported witnesses, Bergtraum is certainly a primary witness, and Fox, Gachelin and Mouterde, because of serious questions as to their personal knowledge of facts relevant to the contested issue here, can only be regarded as at best secondary witnesses in terms of the materiality of their testimony and the likelihood that they will actually testify.

Furthermore, as the Edidins have pointed out, Coface has failed to list a single agent or employee of Coface as a witness. In any event, if any Coface representative is to

---

4. The Court assumes that the authenticity of such documents would be stipulated by the parties. In any event, a witness whose only testimony is the authentication of documents is not a key witness entitled to much weight in this context. See Wright, Miller and Cooper, Federal Practice and Procedure § 3851 at p. 270.

testify as to Coface's understanding of the Agreement, presumably such representative resides in France, and neither forum would be significantly more convenient than the other.

Turning to the Edidins' witness list, Norman Edidin is expected to testify as to his understanding of the Agreement. In support of Norman Edidin's testimony, available for possible testimony as to his prior consistent statements are the following:

| Witness | Residence | Position |
| --- | --- | --- |
| Stanley Meadows | Illinois | attorney |
| Gary Edidin | Illinois | chief executive officer of Optique |
| Alan Nusinow | Illinois | Edidin Associates employee |
| Stephen Gale | Illinois | Edidin Associates employee |
| Milton Levenfeld | Illinois | Optique shareholder |
| Marvin Holland | Illinois | Optique shareholder |
| Morton Feldman | Michigan | former chief executive officer of Optique |

As to the monetary *amount* of any guarantee obligation on the part of the Edidins, testimony as to goods received, goods returned, prior payments, etc. would come from Norman Edidin, Nusinow, Gale, Gary Edidin, Feldman and Meadows, all identified above, as well as Fred Story, a Massachusetts resident.

Finally, as to the Edidins' contention that Coface breached the Agreement by failing to extend insurance for Optique's New Orders, the likely witnesses are Gary Edidin, Norman Edidin, Story, Feldman and Meadows.

As with Coface's witness list, the Edidins' preview of their case must be viewed with a jaundiced eye. Norman Edidin is a party defendant, and his convenience ought not to be duplicitously considered here. Testimony as to the amount of the Edidins' liability appears to be irrelevant, since the amount of the guarantor's exposure in the event of a default is fixed by the Agreement. And testimony as to Coface's alleged failure to continue its insurance obligations also appears to be irrelevant since, if true, the allegation does not appear to be a defense to Coface's claim. It is not disputed that Coface discontinued its performance under the Agreement only after the time it alleges that the defendants had breached the Agreement, and consequently Coface's alleged breach cannot excuse the prior alleged breach by defendants.

On the other hand, testimony as to Norman Edidin's prior consistent statements would appear to be most relevant. It appears that testimony by the parties as to their understanding of the Agreement may likely conflict, and thus that the credibility of the parties will be a key issue. Accordingly, one can reasonably expect that at least several of these witnesses—all residing in or near the Northern District of Illinois—will actually testify.

In short, in evaluating the likely witnesses, the Court concludes that several of the Edidins' witnesses from or near Illinois have material testimony to give, while only one of Coface's listed witnesses—Bergtraum, a New York resident—is similarly promising. Moreover, as noted, any testifying Coface representative would likely come from France. On balance, consideration of the convenience of witnesses also points to the Illinois forum.

3. *Availability of Process to Compel Reluctant Witnesses and*

4. *The Cost of Obtaining the Presence of Witnesses*

The parties have introduced no special circumstances affecting these criteria, and the Court concludes that consideration of these factors points to the Illinois forum on the basis of the previous discussion.

5. *Access to Proof*

Apparently the main focus of documentary production and proof is the books and records of Optique, formerly located entirely on Optique's premises in Connecticut. The Edidins have submitted an affidavit of Gary Edidin, chief executive officer of Optique, which explains that such records have in part been transported to Illinois in connection with other aspects of Optique's financial situation, and pleads that his and Optique's convenience will be better served by transfer to the Chicago federal court. From this record the Court concludes that

the documents are in part located in the New York area and in part in the Chicago area, that they are not so voluminous as to make transportation to or from this area burdensome if it proves necessary, and that if Coface is willing to travel to Illinois if it wishes to review the portion of the relevant documents located there, there will be no resulting inconvenience to Gary Edidin, Optique or the Edidins by maintaining the action here. In short, consideration of this factor points to neither forum as more convenient than the other.

### 6. *Calendar Congestion*

Neither of the two districts under consideration here appears to be superior in this respect.

### 7. *Where the Relevant Events Took Place*

Coface executed the Agreement in New York. The Edidins executed and breached the Agreement in Illinois. In any event, where, as here, there is no evidentiary relevance to the places where relevant events occurred, this factor ought to be accorded little or no weight.

### 8. *Interests of Justice*

While the Agreement provides that New York law will govern this action, the Illinois federal court undoubtedly has sufficient access to New York legal materials. Furthermore, Coface's assertion that this Court is better able to apply New York law than the federal court sitting in Chicago is unrealistically provincial. And in any event, the case appears to turn on the intent of the parties, not intricate questions of New York law.

The Court also notes that transfer of Coface's claim against the Edidins would necessitate severing this claim from Coface's claims against Optique, which are presently stayed. However, it does not appear that severance and transfer of Coface's claims against the Edidins will result in any duplication since the claims against Optique will likely be resolved in connection with the Connecticut bankruptcy proceeding.

In conclusion, consideration of these several factors reveals four—the convenience of the parties, the convenience of the witnesses, availability of process for witnesses and cost of obtaining witnesses—favoring the Illinois forum. On the other hand, none of the factors indicates the New York forum. Accordingly, the Edidins have demonstrated the superiority of the Illinois forum and their motion to transfer pursuant to Section 1404(a) is granted.

### CONCLUSION

The Edidins' motion to dismiss Count Two as against them for failure to state a claim is denied. The Edidins' motion to dismiss Count Three as against them for failure to state a claim is granted. The Edidins' motion to transfer the claim against them (Count Two) to the Northern District of Illinois is granted.

SO ORDERED.