**MERCANTILE FINANCIAL CORPORATION, Plaintiff,**

v.

**UPA PRODUCTIONS OF AMERICA and Henry Saperstein, Defendants.**

No. 82 C 4135.

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1982.

testimony may be a narrow one, but it is also a complete one.
*Id.* at 131–32, 100 S.Ct. at 957.

Mark J. Lieberman, Deerfield, Ill., for plaintiff.

John A. Schulman and Anjani Mandavia, Weissmann, Wolff, Bergmann, Coleman & Schulman, Beverly Hills, Cal., William Serritella, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

BUA, District Judge.

Plaintiff Mercantile Financial Corporation ("Mercantile") has brought the instant diversity action against Defendant UPA Productions of America ("UPA") and its President, Henry Saperstein, for breach of a security agreement. Defendants have filed a motion to dismiss for lack of personal jurisdiction and lack of venue. In the alternative, defendants have moved for a transfer of venue based on the impropriety or inconvenience of this forum. For the reasons stated herein, the motion to dismiss is denied and the Court, based on a finding of improper venue, pursuant to 28 U.S.C. § 1406(a), orders the cause transferred to the United States District Court for the Central District of California.

FACTS

The facts of this matter as they pertain to the motion before the Court are as follows: Plaintiff is a Delaware corporation with its principal place of business in Illinois. Defendant UPA is an entity incorporated under the laws of California. It also maintains its principal place of business in that state. Defendant Saperstein, the President of UPA, resides in California.

The instant action involves a release agreement entered into between the parties in which the parties reaffirmed certain security interests which plaintiff held in certain notes and accounts receivable of the defendants. The purpose of the release was to settle a debt of more than $2 million which defendant owed to plaintiff.

Negotiations concerning the release took place in Illinois, as did the execution of the contract. Under the agreement, the amounts paid on the notes and accounts receivable were to be sent to a "lock box" account held at the Bank of America in California and then forwarded to Mercantile in Illinois. Plaintiff's complaint alleges that the defendants have breached the terms of the release in that the payments received have been deficient.

## JURISDICTION

■ Personal jurisdiction in this diversity action is governed by Ill.Rev.Stat. Ch. 110, ¶ 2–209(a)(1) (formerly § 17(1)(a)) which is the Illinois "long-arm" statute. It provides that:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the Courts of this State as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this State...

*Id.*

Mercantile contends that this Court has jurisdiction over the defendants by virtue of their business dealings in Illinois with plaintiff as well as with others. Defendants, on the other hand, argue that their contacts with Illinois are insufficient under Section 2–209(a)(1) and the due process clause of the Fourteenth Amendment as interpreted by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, to render them subject to suit in Illinois. The Court finds this argument unpersuasive and holds that the cause of action arose directly from the transaction of business within this state, thus subjecting defendants to the Court's jurisdiction in the Northern District of Illinois.[1]

Under Section 2–209(a)(1), a defendant is amenable to suit in Illinois if it has transacted business in the state so long as the litigation arises out of that business transaction. In the instant case, Defendant Saperstein admits to having negotiated and executed the release agreement in Illinois. Where a defendant engages in negotiations of some substance in Illinois regarding the transaction from which the cause of action arose, the defendant is subject to suit in Illinois under Section 2–209(a)(1). *See Scovill Manufacturing Co. v. Dateline Electric Co.*, 461 F.2d 897 (7th Cir.1972); *Ronco, Inc.*

*v. Plastics, Inc.*, 539 F.Supp. 391, 396 (N.D. Ill.1982).

■ Defendants' argument that it was not "doing business" in Illinois is inconsequential. The "doing business" test applies only to assert jurisdiction over an entity where the cause of action is not related to the defendant's contacts in the state and not where, as here, the jurisdictional basis and the transaction are intertwined. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981).

## VENUE

Defendants contend that even if personal jurisdiction can be asserted, venue is improper under 28 U.S.C. § 1391(a) which provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

■ While the plaintiff, Mercantile, maintains its principal place of business in Illinois, for venue purposes a corporate plaintiff "resides" only in the state of incorporation. *Reuben H. Donnelly Corp. v. F.T.C.*, 580 F.2d 264, 270 (7th Cir.1978); *DC Electronics, Inc. v. Schlesinger*, 368 F.Supp. 1029 (N.D.Ill.1974). Mercantile, as a corporate plaintiff, is therefore deemed a resident not of Illinois, but only of Delaware for venue purposes in this diversity action.

Likewise, defendants are not residents of Illinois. The corporate defendant, UPA, is incorporated under the laws of California and maintains its principal and only place of business in that state. Defendant Saperstein, an individual, is a resident of California.

In light of the foregoing, venue could only be invoked in this forum if the claim arose here within the meaning of § 1391(a). Determining where the claim arose is no

---

1. Because the Court concludes that the requirements of Section 2–209(a)(1) have been met, it is unnecessary to consider plaintiff's argument that defendants consented to jurisdiction.

easy task as "there is no reliable touchstone to the meaning of 'where the claim arose.'" 1 Moore's Federal Practice ¶ 0.142[5.–2] (1980).

There are numerous tests which could be used to determine where a claim arose for purposes of venue in a diversity action.[2] While each test has its strengths and weaknesses, none has emerged as being clearly preferable. Unfortunately, in considering this matter in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court expressly declined to resolve the dispute. The Court did note, however, that:

> [T]he broadest interpretation of the language of § 1391(b) (which also relates to where the claim arose) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility ... may be assigned as the locus of the claim.

*Id.* at 184–5, 99 S.Ct. at 2717.

The *Leroy* Court concedes that a claim may arise in more than one place. Further, by its discussion of "equal plausibility," it would appear that the Court favors the approach under which various factors are weighed over one which mechanically assigns the situs of a portion of the transaction as the place where the claim arose. In light of the Court's dictum, this Court is of the belief that the "weight of contacts" approach espoused by Judge Conner in *Honda Associates v. Nozawa Trading,* 374 F.Supp. 886 (S.D.N.Y.1974) is the most workable and most appropriate analysis for resolution of the issues before the Court.

In *Honda Associates,* the Court was faced with the determination of where a claim arose in a trademark action in which a California defendant was allegedly infringing upon a trademark held by a New York plaintiff. Defendants' contacts with the State of New York were minimal and were entirely by mail. In holding that the claim did not arise in New York, the Court noted first the fundamental distinction between jurisdiction and venue and went on to say that venue may be improper notwithstanding that jurisdiction has been established. Judge Connor also stated that the "weight of contacts" within a forum state had to be substantial before venue could be considered proper. "[T]he right ... to sue in any district 'in which the claim arose' is not the right to sue where *any* part of the claim, however small, arose." 374 F.Supp. at 892.

In *Coface v. Optique du Monde, Ltd.,* 521 F.Supp. 500 (S.D.N.Y.1980), Judge Connor again faced the issue of where a claim arose. In *Coface,* the plaintiff, an agency of the government of France, acquired a security interest in various debts owed by defendant, Optique, to numerous French manufacturers. Certain individuals who were residents of Illinois signed the payment agreement as guarantors of Optique's obligations.

When Optique defaulted on its obligations, the plaintiffs sued it and the guarantors in the Southern District of New York. The guarantors then moved to dismiss the matter or, in the alternative, to transfer the

---

**2.** *See, e.g., Ryan v. Glenn,* 336 F.Supp. 555 (N.D.Miss.1971) (place of execution of the contract); *American Carpet Mills v. Gunny Corp.,* 649 F.2d 1056 (5th Cir.1981) (place of performance); *Finance America Credit Corporation v. Kruse Classic Auction Co.,* 428 F.Supp. 135 (E.D.Pa.1977) (place where payment is to be received); *Philadelphia Housing Authority v. American Radiator and Standards Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa.1968) (most significant contacts); *Commercial Lighting Products, Inc. v. United States District Court,* 537 F.2d 1078 (9th Cir.1976) (significant contacts); *Oce Industries, Inc. v. Coleman,* 487 F.Supp.

548 (N.D.Ill.1980) (venue coextensive with personal jurisdiction). The foregoing is by no means an exhaustive compilation.

None of the tests are free from weakness. For example, the tests which focus on a single place of performance or execution appear to have the potential of being overly mechanical and hypertechnical. The tests which involve a weighing of factors can likewise be faulted for providing no guidance as to the relative weights to be accorded each factor. Finally, the notion that makes venue coextensive with jurisdiction would appear to make venue a duplicitous and unnecessary requirement.

case to the Northern District of Illinois. In holding that venue was proper in the Northern District of Illinois, the Court considered the fact that the guarantors resided in Illinois and that they were obliged to perform their obligations in that district as requiring a conclusion that the claim arose in Illinois. This conclusion was reached notwithstanding plaintiff's argument that the agreement was executed in New York, that payments were to be credited through a New York bank, and that the agreement contained a clause by which the parties consented to the jurisdiction of the New York state and federal courts.[3]

Notwithstanding its conclusion, the Court noted that, under *Leroy,* it could be argued that the claim arose in both Illinois and New York. In this regard, the Court considered whether the two districts could be designated as the situs of the claim with "equal plausibility," (quoting *Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717) and concluded that based on the residence of the parties, the alleged places of execution and performance, and other similar factors, the New York forum was not as plausible a forum as the Northern District of Illinois.

 The instant case is similar to *Optique.* The defendants in the case at bar are California residents; the accounts receivable were maintained in California; the payments on the accounts were made and processed through a California bank; and all accounting and other bookkeeping was done in California. By comparison, the connection with Illinois is that the agreement was executed here and that plaintiff maintains an office and is forwarded payments here. Both parties have alleged the presence of numerous witnesses and documents in the respective states. Having weighed the contacts in the instant case, the Court is of the opinion that the claim arose, for purposes of § 1391, in California.

3. Although the defendant guarantors argued that the agreement was not executed in New York and that the payments were not credited through a New York bank, the Court noted

## ORDER

The instant case could and should have been brought in the District Court for the Central District of California as that is where the claim arose. Accordingly, pursuant to 28 U.S.C. § 1406(a), the Court orders this matter transferred to that district in the interest of justice. Defendants' motion to dismiss is therefore denied and the motion to transfer is hereby granted.

IT IS SO ORDERED.

that, "In any event, these facts do not ... establish New York as an equally plausible situs of the claim." 521 F.Supp. at 506.