William J. KRAMER, Plaintiff,

v.

PITTSTOWN POINT LANDINGS, LTD., et al., Defendants.

No. 85 C 10795.

United States District Court, N.D. Illinois, E.D.

July 3, 1986.

Stephen E. Smith, Gerald P. Callaghan, Daniel J. Slattery, Siemon, Larsen & Purdy, Chicago, Ill., for plaintiff.

Charles F. Marino, Chicago, Ill., for defendants.

ORDER

BUA, District Judge.

Before the Court are defendants' motions to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer this case to the Eastern District of Wisconsin, and plaintiff's motion for summary judgment. For the reasons stated herein, defendants' motion to dismiss is denied, and the motion to transfer is granted. Since the case is transferred, plaintiff's motion for summary judgment is not considered by this Court.

I. FACTS

Plaintiff William J. Kramer, an Illinois resident, filed a four-count complaint against defendants. Defendants are Pittstown Point Landings, Ltd. (PPL), a Bahamian corporation, and twelve individual defendants who are all shareholders and directors of PPL. Eight individual defendants, J. Curtis McKay, Ron Osbon, Peter Kohler, Robert Lorence, Louis Selzer, William Stanford, Dr. Lee H. Thompson, and Thomas E. McKay, are Wisconsin residents. The four other individual defendants reside elsewhere—Dale R.A. Cady in Alabama, Bruce Spiller in New Hampshire, Robert S. Beardsley in Maryland, and Earle Scavella in the Bahamas.

Plaintiff's claims arise out of a business venture entered into by Kramer. PPL is a resort on Crooked Island in the Commonwealth of the Bahamas. Plaintiff vacationed at PPL in December 1981, and in late December 1982 and early January 1983. Plaintiff alleges that, during the '82–83 vacation, defendants Osbon, T.E. McKay, and Spiller initiated discussions about the availability of stock for purchase in PPL, and that upon returning to Illinois during January 1983, he received numerous telephone calls from Osbon regarding the purchase of PPL stock. Defendants, however, contend that plaintiff initially inquired into the availability of stock in PPL during his vacation in 1981, and again in 1982.

In any event, plaintiff received two letters from defendant J.C. McKay, sent from Wisconsin to Illinois, in response to the plaintiff's expression of interest in becoming an investor in PPL. The first letter, dated January 17, 1983, explained the investment opportunity and suggested a meeting in Milwaukee. The second letter, dated February 8, 1983, enclosed a copy of an unexecuted agreement for purchase of PPL stock to be signed at the meeting in Milwaukee.

There was a meeting in Milwaukee, Wisconsin on February 16, 1983, where the plaintiff and seven defendants, J.C. McKay, Osbon, Kohler, Lorence, Selzer, Stanford, and Thompson, signed the agreement for purchase of PPL stock. The agreement, dated February 16, 1983, provides in pertinent part:

That upon the payment of $52,200 U.S. by Kramer, to PPL, the transfer agent of PPL shall be instructed to issue 261 shares of the nonassesable [sic] common stock of PPL to Kramer or his designee, subject only to the approval of the Central Bank of the Bahamas permitting Kramer or his designee to become a stockholder in a Bahamian corporation. Failure of approval of the Central Bank of the Bahamas shall result in a refund of all funds paid hereunder to Kramer.

Plaintiff sent two checks totaling $52,200 from Illinois to J.C. McKay, the President of PPL, in Wisconsin on February 21, 1983 and March 28, 1983. Plaintiff has not received his 261 shares of PPL stock or a refund of his purchase price of $52,200.

Defendants admit that plaintiff has not been issued stock due to the failure of approval of the Central Bank of the Bahamas. Defendants, however, allege that they are continuing efforts to obtain approval and that upon approval, plaintiff will be issued stock. They also allege that, at the February 16, 1983 meeting in Milwaukee, plaintiff was informed that it was uncertain when such approval would be obtained and for that reason, the Agreement

did not provide for any time within which the plaintiff's funds would be refunded if such approval was not obtained.

Plaintiff's complaint consists of four counts. Count I alleges breach of the agreement dated February 16, 1983, in that defendants failed to issue 261 shares of stock or refund plaintiff's purchase price of $52,200. Counts II and III allege that defendants made certain oral and written misrepresentations to the plaintiff in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934. Count IV alleges that defendants made untrue statements of material fact, and also failed to file a report with the Illinois Secretary of State with respect to the sale of stock in the corporation, in violation of the Illinois Securities Law of 1953.

## II. DISCUSSION

At the outset, the Court notes that although this complaint consists of four Counts, Count I, based on breach of contract, is the gravamen of the complaint. Therefore, defendants' motion to transfer pursuant to 28 U.S.C. § 1404 will be analyzed in relation to the breach of contract claim first.

28 U.S.C. § 1404(a) provides in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ In order to meet the requirements of § 1404(a), the movant must establish (1) that venue is proper in the transferor district; (2) that the transferor court has the power to transfer the case (the transferee district is one in which the case could have been brought); and (3) that the transfer is for the convenience of parties and witnesses, in the interest of justice. *VanGelder v. Taylor*, 621 F.Supp. 613, 618 (N.D.Ill.1985).

Requirement (1) is not clearly satisfied. Since this action "is not founded solely on diversity of citizenship," it may be brought "only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." 28 U.S.C. § 139(b). The defendants do not all reside in the same district, so venue is proper only in the district where the claim arose.

The determination of the district in which a claim arose for venue purposes was discussed in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). The Supreme Court stated in *Leroy:*

> [T]he broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in one specific district, a plaintiff may choose between those two (or conceivably more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 184–85, 99 S.Ct. at 2716–17.

■ Therefore, under *Leroy* if the locus of the claim in this case could be assigned to either Illinois or Wisconsin with equal plausibility, venue is proper in Illinois, where plaintiff brought this action. An examination of the factors set forth in *Leroy* —the availability of witnesses, the accessibility of relevant evidence, and the convenience of the defendants—reveals that Illinois is not as equally plausible a locus for the claim as is Wisconsin.

For the vast majority of witnesses in this case, Wisconsin would be a more convenient forum. The key issue in this case involves the facts made known to the plaintiff, relating to the agreement in question, during the meeting in Milwaukee on February 16, 1983. There were eight witnesses present at the meeting. Seven are defendants and residents of Wisconsin. Obviously, convenience of these seven witnesses favors Wisconsin over Illinois. The only witness inconvenienced by Wisconsin is the plaintiff himself.

The second factor to be considered is the accessibility of other relevant evidence. The bulk of documents which will be required in this case, such as the Agreement and letters to the plaintiff, are already before the Court. Any other documents, such as depositions from the Central Bank of the Bahamas, are equally accessible in Wisconsin or Illinois.

The third factor to be considered is the convenience of the defendants. None of the defendants reside in Illinois. Eight out of the twelve individual defendants reside in Wisconsin. The other five defendants—the Bahamian corporation, and residents of Alabama, New Hampshire, Maryland, and the Bahamas—appear to be equally inconvenienced in traveling to Illinois or Wisconsin. Therefore, the residence of the Wisconsin defendants is controlling, and Wisconsin is obviously more convenient. Thus, having considered the factors in *Leroy*, this Court is of the opinion that it is not equally plausible to place the situs of the claim in Illinois, and therefore plaintiff's choice of forum was improper. Venue is proper for Count I of the complaint, for breach of contract, only in Wisconsin.

This result is consistent with the "weight of contacts" approach this Court uses in determining where a claim arose. *See Mercantile Financial Corp. v. UPA Productions*, 551 F.Supp. 672 (N.D.Ill.1982). The agreement in question was signed in Wisconsin and there was a meeting in Wisconsin at which the terms of the agreement were discussed. The only contacts with Illinois were: (1) telephone calls made from Osbon in Wisconsin to plaintiff in Illinois during which plaintiff's willingness to purchase PPL stock was discussed; (2) two letters sent from J.C. McKay in Wisconsin to plaintiff in Illinois—one letter dated January 17, 1983, explaining the investment opportunity and suggesting a meeting in Milwaukee, the other letter dated February 8, 1983, enclosing a copy of an unexecuted agreement to be signed at the meeting; and (3) the mailing by plaintiff in Illinois of two checks totaling $52,200 to J.C. McKay in Wisconsin. The events occurring in Illinois were all incidental to events occurring in Wisconsin, namely attendance at the meeting and execution of the contract. Under these facts, the contacts weigh more heavily in favor of Wisconsin than Illinois, and under the "weight of contacts" test, venue is proper in Wisconsin, but not in Illinois.

Since the claim did not arise in Illinois, for venue purposes, requirement (1) of the § 1404(a) transfer analysis is not satisfied. Therefore, a transfer under § 1404(a) is improper. However, instead of dismissing this case for improper venue, this Court may transfer this case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Since venue is proper for this case in the Eastern District of Wisconsin, the Court holds that, in the interest of justice, this case should be transferred.

█ The foregoing analysis has been done as if Count I of the complaint, breach of contract, is the sole grounds for relief. The Court notes that venue is also proper in Wisconsin for Counts II, III, and IV. Count II is based on an alleged violation of the Securities Act of 1933. Venue is proper for a claim based on the Securities Act where "the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, ..." 15 U.S.C. § 77v. Count III is based on a violation of the Securities Exchange Act of 1934. Venue is proper for a claim based on the Exchange Act where "the defendant is found or is an inhabitant or transacts business, ..." 15 U.S.C. § 78aa. Venue under the securities laws, which is proper where the defendant "transacts business," rather than only "where the claim arose," is broader than under 28 U.S.C. § 1391. *See 15 Wright, Miller & Cooper, Federal Practice and Procedure* § 3824 (1986). The test for laying venue under the securities laws "is whether the Act on which venue is predicated is 'an integral part of' or 'of material importance' to the commission of the violations." *Jacobs v. Tenney*, 316 F.Supp. 151, 158 (D.D.Del.1970). Execu-

tion of the contract and discussions relating thereto are acts that are an integral part of and of material importance to the alleged violations. Therefore, venue in Wisconsin is clearly appropriate for Counts II and III under § 77v and § 78aa.

Venue is also proper in Wisconsin for Count IV. Count IV is based on violations of the Illinois Securities Law of 1953. However, "[t]here is no right of action under the statute unless the sale complained of took place in Illinois." *McBreen v. Iceco, Inc.,* 12 Ill.App.2d 372, 377, 139 N.E.2d 845, 848 (1956). The Court has already decided that, for venue purposes, the claim arose in Wisconsin. The Court does not decide where the "sale" occurred, because that decision will be left to the transferee court.

█ In addition, the Court need not decide whether the claim arose for Count IV in Wisconsin or Illinois. The four counts in this action encompass one transaction and allege several grounds for relief. Plaintiff seeks damages for a single wrong, the failure to issue stock or refund the purchase price. The four grounds for relief are identical as to parties and similar as to the proof. The witnesses and evidence will be mostly, if not entirely, the same. These circumstances indicate that there is but one cause of action. *See, e.g., Beattie v. United States,* 756 F.2d 91 (D.C.Cir.1984). Although the general rule is that venue must be established as to each separate claim, if the claims amount to one cause of action with separate grounds for relief, proper venue as to the principal claim will support adjudication on all claims. *Id.* at 100. Since venue has been established for the principal claims in Wisconsin, venue is also proper in Wisconsin for the fourth count. Thus, with venue proper for all four counts, Wisconsin is a place where the case "could have been brought" under § 1406(a).

Plaintiff argues that a transfer is improper because it may be impossible to gain jurisdiction over certain defendants in the State of Wisconsin. This argument is not persuasive because there is no showing that personal jurisdiction is more likely over the non-Wisconsin residents in Illinois than in Wisconsin. In fact, personal jurisdiction over these particular defendants is less likely in Illinois, because the transaction in question has more contact with Wisconsin than Illinois. In addition, jurisdiction over the Wisconsin defendants is at least in question in Illinois, whereas there is no doubt about the propriety of subjecting those defendants to suit in Wisconsin. Thus, plaintiff's argument that Wisconsin is not a place where the present action "could have been brought" fails.

Upon finding that a § 1406(a) transfer to Wisconsin is in the interest of justice, there is no need to decide whether the suit should be dismissed for lack of personal jurisdiction over the defendants in Illinois. This is because "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). Therefore, defendants' motion to dismiss for lack of personal jurisdiction is denied.

### III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss for lack of personal jurisdiction is denied. Based on its finding that venue is not proper in this forum, the Court transfers this case, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Wisconsin.

IT IS SO ORDERED.