NCC SUNDAY INSERTS, INC. and Marketing Corporation of America, Plaintiffs,

v.

WORLD COLOR PRESS, INC., Defendant.

No. 86 Civ. 9647 (GLG).

United States District Court, S.D. New York.

Aug. 5, 1987.

Levett, Rockwood & Sanders, P.C., Westport, Conn. (David R. Levett, Madeleine F. Grossman and Dorit S. Heimer, of counsel), and Friedman, Wang & Bleiberg, P.C., New York City, for plaintiffs.

Gallop, Johnson & Neuman, St. Louis, Mo. (Samuel C. Ebling, David W. Harlan and Thomas M. Newmark, of counsel), and Latham & Watkins, New York City (Selvyn

Seidel and John D. Shyer, of counsel), for defendant.

GOETTEL, District Judge:

The plaintiffs, NCC Sunday Inserts, Inc. ("NCC") and Marketing Corporation of American ("MCA"), seek a declaratory judgment against the defendant, World Color Press, Inc. ("World"), that the plaintiffs are not in breach of their requirements contract with the defendant. One day after the plaintiffs filed this action, the defendant filed a complaint against the plaintiffs and a third party in the Southern District of Illinois, charging the plaintiffs with breach of contract, promissory estoppel, and tortious interference with a contract.

The defendant now moves this Court, pursuant to 28 U.S.C. § 1404(a) (1982), to transfer this case to the Southern District of Illinois. The plaintiffs move this Court, pursuant to Fed.R.Civ. P. 65, to enjoin the defendant from prosecuting its action in Illinois.

Jurisdiction is premised on 28 U.S.C. § 1332 (1982) and 28 U.S.C. § 2201 (1982 & Supp. III 1985).

*Background*

Both plaintiffs are Connecticut corporations with their headquarters in Connecticut. Plaintiff NCC, until November 13, 1986, was in the business of placing promotional advertising through the publication of free-standing coupon inserts ("inserts") for inclusion in newspapers throughout the United States. Plaintiff MCA indirectly owned all of NCC's outstanding stock.

The defendant is a Delaware corporation with its headquarters in Effingham, Illinois; it also maintains a sales office in New York city. The defendant's business includes the printing of free-standing coupon inserts.

On December 28, 1982, the defendant and the plaintiffs entered into a long-term requirements contract ("the contract") under which the defendant agreed to print all of the plaintiffs' requirements for inserts.

The contract, originally for the term January 1, 1983 to December 31, 1985, was extended three times, most recently to run through December 31, 1994. Specifically in order to meet the requirements of the contract, the defendant expanded its Mount Vernon, Illinois facility, invested in equipment and supplies, purchased high-speed printing presses, and expanded its work force to accommodate the approximately 50% increase in workload which the contract produced. It also entered into contracts with other companies to acquire facilities for distribution of the plaintiffs' inserts. In accordance with an exclusive-dealing provision in the contract, the defendant refused other insert printing business offered to it.

In October 1986, the plaintiffs notified the defendant that they were interested in selling NCC's insert operations. The defendant considered purchasing NCC, and various negotiations ensued. On October 23, 1986, the parties agreed that the defendant would have until November 3 or 4 to respond to the plaintiffs' latest proposals. However, on October 31, 1986, the plaintiffs advised the defendant that a third party, George F. Valassis & Co., ("GFV & Co.")[1] had made a cash offer for NCC and would execute a formal letter of intent with the plaintiffs on November 3. The same day, the defendant advised the plaintiffs that it accepted one of their two proposals.

On November 4, the plaintiffs rejected the defendant's acceptance and made public to their employees the agreement to sell the insert business to GFV & Co. In a November 20 letter to the defendant, the plaintiffs terminated the contract. The defendant subsequently printed one issue of inserts for GFV & Co., for inclusion in January 4, 1987 newspaper editions.

*Discussion*

In considering whether to transfer an action pursuant to § 1404(a), the Court must consider several factors: the convenience of the parties, the convenience of witnesses, the availability of compulsory

---

1. GFV & Co. is named as a defendant in World's Illinois complaint.

process, the cost of obtaining witnesses' presence, the parties' access to proof, the calendar congestion of the respective courts, the situs of the relevant events, and the interests of justice in general. *Coface v. Optique du Monde, Ltd.*, 521 F.Supp. 500, 507 (S.D.N.Y.1980).

■ The burden is on the defendant, as movant, to demonstrate that the balance of these factors favors transfer, *see Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), by a clear and convincing showing, *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983).

■ The defendant concedes that the convenience of parties and of witnesses, the access to proof, the availability of compulsory process, and the courts' docket congestion are balanced equally between New York and Illinois.[2] Therefore, the defendant relies on the final two *Coface* factors to tip the balance in favor of transfer.

The defendant argues that the relevant events transpired in Illinois, since it was there that the contract was performed. However, the gravamen of the dispute is not performance of the contract, but the contract provisions and the intent of the parties. The location where the contract was performed has no evidentiary relevance. *See Coface, supra*, 521 F.Supp. at 571. And the parties agree that the contract and its three amendments were negotiated and executed in New York and Westport, Connecticut by the plaintiffs and the New York representatives[3] of the defendant.

The defendant also argues that a transfer must be granted in the interests of justice, in order that all issues in dispute may be resolved. The defendant asserts that the Southern District of Illinois is the only district which can obtain jurisdiction over GFV & Co. in order to hear the defendant's claims against that company. However, the plaintiffs' counsel has indicated in his affidavit that GFV & Co. maintains a New York office whose activities constitute "doing business" under CPLR § 301, and that George Valassis will voluntarily consent to the jurisdiction of this court. Defendant has therefore not made a sufficient showing that it will be unable to join GFV & Co. as a party to this dispute or to summon George Valassis to testify.

The defendant has failed to carry its burden of demonstrating that either the balance of conveniences or the interests of justice require the transfer of this action to Illinois.

The defendant also argues that the plaintiffs' action here was commenced in anticipation of the defendant's planned action in Illinois and thus should not receive an advantage under this circuit's general rule favoring the first-filed action. *See, e.g., William Gluckin & Co., Inc. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969). However, unlike the authorities upon which the defendant relies, the defendant does not allege that it ever formally notified plaintiffs of its intention to file its complaint. *See Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967) (plaintiff advised by letter of defendant's intention to sue prior to plaintiff's filing); *Factors, supra*, 579 F.2d 215 (defendant's declaratory judgment action triggered by notice letter from plaintiff). The defendant fails to suggest that the plaintiffs had actual knowledge of its strategic timetable for filing.[4] Thus the defendant's

---

**2.** Notwithstanding this concession, the defendant, in the course of arguing that the nexus of the contract is Illinois, offers a list of witnesses which it argues are material to its case, and who will be inconvenienced should the case continue in New York. However, the testimony of those witnesses, if it is offered at all, is relevant only to damages.

**3.** James A. Dawson, World's Senior Vice President of Sales; Jack Egan, World's Eastern Sales Account Executive.

**4.** Officers of the defendant agreed on December 1, 1986 to file their complaint upon the completion of the insert run for GFV & Co., then estimated for December 15, in order both to recoup lost employee morale and to prevent friction during the period when World employees would necessarily be working with GFV & Co. employees. On December 16, counsel for World was advised that the printing of the Valassis inserts would be completed on December

allegation that the plaintiffs' filing was anticipatory is too speculative to overcome, by itself, the first-to-file rule.[5]

The defendant's final argument is that because Illinois law is to be applied, pursuant to the terms of the contract, the case should be tried in Illinois, where the district court is likely to be more familiar with Illinois law. The dispute in this case, however, concerns the construction of the contract, rather than "intricate questions" of Illinois law, and therefore does not necessitate transfer to that court. *Coface, supra,* 521 F.Supp. at 511. *Accord, Vassallo v. Niedermeyer,* 495 F.Supp. 757, 760 (S.D.N.Y.1980).

*Conclusion*

The defendant's motion to transfer this case to the Southern District of Illinois is denied.

The plaintiffs' motion to enjoin defendant's action in the Southern District of Illinois is denied without prejudice to renewal if all of the parties and causes in the Illinois action become part of this action.

SO ORDERED

18; the defendant filed its complaint in Illinois on December 18.

5. The Court does not place great weight on the order of filing in this case, since the filings were less than twenty-four hours apart.