**WALPEX TRADING CO., Plaintiff,**

v.

**YACIMIENTOS PETROLIFEROS FISCALES BOLIVIANOS, Defendant.**

**84 CIV. 4364 (PKL).**

United States District Court, S.D. New York.

April 16, 1986.

Lane & Mittendorf (Edward C. Cerny III, William E. Kelly, and Alan W. Borst, of counsel), New York City, for plaintiff.

Gibson, Dunn & Crutcher (Walter L. Stratton, and Jonah D. Zimiles, of counsel), New York City, for defendant.

LEISURE, District Judge:

This is an action for breach of contract brought by plaintiff Walpex Trading Co., Inc. ("Walpex") against defendant Yacimientos Petroliferos Fiscales Bolivianos ("YPFB"), a corporate instrumentality of Bolivia. Walpex alleges that, following an international bidding competition, it entered into a contract to sell YPFB 88,500 feet of three and one-half inch seamless steel tubing and accessories. Walpex also alleges that in reliance on its agreement with YPFB, it entered into an irrevocable supply agreement with Vinson International Supply Company ("Vinson"). Following this performance by Walpex, however, YPFB repudiated the contract. Walpex alleges that, as a result of this repudiation, it found itself in possession of a large supply of specialty steel tubing for which no market existed. Eventually, in an attempt to mitigate damages, plaintiff made two resales at below cost. Finally, in June 1984, Walpex commenced the present action against YPFB for the purchase price of the Walpex-YPFB contract plus incidental damages, an amount totalling $1,538,228.65 without pre-judgment interest (when such interest is added, the amount sought is approximately $2,000,000). According to plaintiff, this Court has subject matter jurisdiction not only by reason of diversity of citizenship, but also under the federal statute which invests district courts with original jurisdiction over non-jury civil actions brought against a foreign state. 28 U.S.C. § 1330(a); *see* 28 U.S.C § 1603 ("foreign state" defined to include an agency or instrumentality of a foreign state).[1]

On June 20, 1985, a year after the complaint had been filed, plaintiff moved for a default judgment under Fed.R.Civ.P. 55(b) and 28 U.S.C. § 1608(e) (entry of default judgment against a foreign state). On Sep-

---

1. Plaintiff maintains that defendant YPFB, as an instrumentality of a foreign state under the Foreign Sovereign Immunities Act of 1976, *see* 28 U.S.C. § 1603(b), is excepted from any entitlement to sovereign immunity because it has committed "an act outside the territory of the United States in connection with a commercial activity of the foreign state *elsewhere* and that act [has] cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

tember 11, 1985—having been informed by letter that YPFB had finally retained local counsel—this Court ordered YPFB to respond to plaintiff's motion by September 23. On that date, YPFB responded and cross-moved, pursuant to Fed.R.Civ.P. 6(b), for a 30-day extension of defendant's time to answer. In its reply, Walpex, recognizing the possibility that this Court might grant "relief from default" under Fed.R.Civ.P. 55(c), conditionally moved the Court to impose certain terms and conditions upon such relief. Finally, on November 4, 1985, YPFB filed an affidavit by Dr. Luis Alipaz (YPFB general counsel) in further support of defendant's cross-motion for extended time to answer.

In his affidavit, Dr. Alipaz acknowledged defendant's receipt of the complaint in July 1984. According to Alipaz, YPFB's Legal Direction department prepared a legal memoranda on the matter (suggesting possible grounds for a motion to dismiss in this District) and sent it to the General Management of the YPFB. Alipaz concedes that Legal Direction subsequently took no action on the Walpex complaint (apparently assuming that General Management was handling it) until plaintiff's motion for default judgment was received in July 1985. Upon inquiry, Alipaz states, Legal Direction discovered that the memoranda and related documents sent to General Management months before had simply been misplaced, apparently "due to administrative failures, caused by the continuous strikes and institutional and economic problems in the company as well as in the whole country [of Bolivia]." Alipaz Affidavit ¶ 6. As Alipaz explains by way of affidavit and appended news clippings, social unrest and labor strikes were widespread in Bolivia at this time, as the populace responded negatively to economic regulations imposed by the Government.

## DISCUSSION

### I. THE APPROPRIATENESS OF A DEFAULT JUDGMENT IN THIS CASE

In order to be entitled to the entry of a default judgment against YPFB under Fed.

R.Civ.P. 55(b), Walpex must—as a threshold matter—establish its claim or right to relief "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This is a test that Walpex meets fairly easily. Under N.Y.U.C.C. § 2–709(1)(b), the seller of "goods identified to the contract" can maintain an action for the price and recover incidental damages against a non-paying buyer, provided that "the seller is unable after reasonable effort to resell [the goods] at a reasonable price or the circumstances reasonably indicate that such efforts will be unavailing." Walpex argues that the special steel tubing produced for YPFB by plaintiff's supplier Vinson were identified to the contract as soon as Vinson placed a hold on a quantity of its steel tubing in its computerized inventory and began to process it for the Walpex-Vinson contract. See N.Y.U.C.C. § 2–501(1)(b) (goods are identified to a contract when they are designated by seller as goods to be applied in performance). Walpex further argues that, in addition to incidental damages, it is entitled to pre-judgment interest under N.Y.C.P.L.R. § 5001, that is, 9% simple interest from the date when performance was due (September 1982). See Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co., 697 F.2d 481, 485 (2d Cir.1983).

■ Based on the foregoing, it appears that this Court would have been justified in granting a motion by Walpex for default judgment if such motion had been made *unopposed*. In this case, however, plaintiff's motion for default judgment is opposed. Defendant's opposition to plaintiff's motion for a default judgment, whether styled as Rule 6(b) cross-motion or as mere opposition, should now be treated as a motion to set aside an entry of default under Fed.R.Civ.P. 55(c). See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981) (per curiam); cf. Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir.1983).[2]

■ Rule 55(c) permits a district court to set aside a default judgment for "good

---

**2.** There has never been a default judgment entered in this case. On August 26, 1985, the

cause shown." According to the Second Circuit:

> Whether good cause is deemed to have been shown depends on three considerations: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." The decision is committed to the discretion of the district court, but "[a]n abuse of discretion need not be glaring to justify reversal." The narrow scope of the district court's discretion stems from "strong policies favoring the resolution of genuine disputes on the merits," and for the same reasons, "doubts are to be resolved in favor of a trial on the merits."

*Traguth v. Zuck, supra*, 710 F.2d at 94 (citations omitted). Ordinarily, the standard applied by a court in deciding a Rule 55(c) motion is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b). *Meehan v. Snow, supra*, 652 F.2d at 276. In this case, however, YPFB has confused matters by cross-moving for extended time to answer under Fed.R. Civ.P. 6(b), a rule that permits the extension of defendant's time to answer "where the failure to act was the result of excusable neglect." This Court deems it inappropriate, however, to hold defendant to the higher standard of excusable neglect merely because YPFB inaptly invoked Rule 6(b) in its cross-motion. Accordingly, this Court's decision whether or not to grant plaintiff's motion for default judgment will be based on the three-prong standard articulated by the Second Circuit in *Traguth v. Zuck, supra*.

### A. Willfullness of Default

Plaintiff's position is that even if defendant's version of the relevant facts is accepted as completely true, the inference to be drawn is that YPFB's default was a conscious decision rather than a product of neglect. Defendant, on the other hand, insists that the Alipaz affidavit demonstrates that plaintiff's complaint was inadvertently misplaced during a period of severe political and labor unrest.

Defendant's characterization of its own conduct is charitable to a fault. The Alipaz affidavit itself clearly indicates that YPFB's legal department took no direct action for a year's time after receiving plaintiff's complaint. Instead, YPFB's lawyers shunted the complaint to another department and apparently assumed that management was handling the Walpex lawsuit. This explanation, to an extent, defies common sense and experience. It is a company's lawyers that respond to service of process, not its managers.

In a case in which defendant moved to vacate a default judgment under Rule 60(b), Judge McLaughlin of the Eastern District used strong language in denouncing conduct not dissimilar to YPFB's behavior in the instant case:

> Defendant's excuse for inaction is pathetic. It is inconceivable to the Court that a responsible businessman would simply file away legal papers naming his company in a lawsuit ..., and then seek relief only after the sheriff arrived at his door to execute judgment. Defendant's own papers establish that, notwithstanding the reasons therefor, the default was willful: [defendant] deliberately chose to ignore valid legal process that he acknowledged receiving.

*Tecnart Industria E Comercio LTDA., v. Nova Fasteners Co., Inc.*, 107 F.R.D. 283, 285 (E.D.N.Y.1985).

Unlike the defendant in *Tecnart*, however, YPFB raises the marginally credible argument that its default was caused in part by the severe political unrest in Bolivia. Under the circumstances, this Court is

---

Clerk of the Court of this District "noted" defendant's default in a "Clerk's Certificate." Local Rule 10(b) of this District requires that such a default notation accompany any application to a district court for the entry of a default judgment. *See Meehan v. Snow*, 652 F.2d 274, 276

n. 4 (2d Cir.1981); *see also* Fed.R.Civ.P. 55(a) (clerk may enter default). Such a default notation is to be construed as nothing more than an interlocutory action; it is not itself a judgment. *See Manuel Int'l Inc. v. Rascator Maritime S.A.*, 782 F.2d 329, 335 (2d Cir.1986).

more reluctant than Judge McLaughlin was in *Tecnart* to find defendant's default to have been willful. In short, the question of willfulness in this case is a close one. It is a question, however, that need not be resolved squarely in YPFB's favor in order to deny plaintiff's motion for a default judgment. *Cf. Tecnart, supra,* 107 F.R.D. at 285 (although defendant's default was willful, court must grant the motion to vacate default where defendant has demonstrated the presence of meritorious defenses and plaintiff has failed to demonstrate prejudice).

### B. Existence of Meritorious Defenses

YPFB has asserted several defenses to plaintiff's action. First, defendant contends that this Court lacks personal jurisdiction over defendant, although YPFB apparently concedes that it is defendant's contacts with the United States, rather than with the State of New York, that should be the touchstone of this Court's due process analysis. *See Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 314 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982) (where service of process is made upon the instrumentality of a foreign state pursuant to § 1608 of the Foreign Sovereign Immunities Act, the relevant geographic area for determining defendant's contacts is the United States, not merely New York). YPFB also argues that even if this Court were to uphold the exercise of personal jurisdiction against defendant, the present action is an appropriate case for dismissal under the doctrine of *forum non conveniens. See, e.g., Overseas Nat'l Airways v. Cargolux Airlines International,* 712 F.2d 11 (2d Cir.1983) (upholding dismissal of action against Luxemburg corporation).

Second, defendant emphatically denies that an actual contract ever existed between Walpex and YPFB. Defendant actually relies on the affidavits submitted by F. Walter Piraino, the President of Walpex, in supporting its argument that although Walpex was identified by YPFB as the successful bidder on the steel tubing contract, Walpex was expressly directed to enter into a formal agreement. Defendant maintains that the failure of either party to execute a purchase order or written contract in the Walpex-YPFB transaction is a complete defense to the present action instituted by Walpex. In response, Walpex maintains that the mere fact that parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking place prior to that event. *See V'Soske v. Barwick,* 404 F.2d 495, 499 (2d Cir.1968), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969). Plaintiff, however, has conveniently omitted the corollary proposition, that "if the parties intend not to be bound until they have executed a formal document embodying their agreement, they will not be bound until then." *Id. See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74 (2d Cir.1984); *Songbird Jet Ltd. v. Amax Inc.,* 605 F.Supp. 1097, 1101 (S.D.N.Y.1985) (Weinfeld, J.).

Finally, YPFB maintains that Bolivian law and the official YPFB regulations governing Walpex's bid or its resulting contract require that any subsequent disputes arising between Walpex and YPFB be submitted to Bolivian authorities and be resolved according to Bolivian law. It is plaintiff's contention that this purported forum-selection and choice-of-law clause was never included in any documents exchanged between the parties. Moreover, plaintiff contends that such a clause, even if somehow incorporated into the parties' agreement, could only reasonably be construed as permitting, rather than requiring, resolution of disputes in a Bolivian forum. *See Coface v. Optique du Monde, Ltd.,* 521 F.Supp. 500, 506 (S.D.N.Y.1980).

Having reviewed the submissions of both parties, I am far from convinced that YPFB's defenses will prevail at trial. However, "since a defendant seeking to vacate a default judgment need not conclusively establish the validity of the defense(s) asserted," *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983), I find that YPFB "ha[s] made a sufficient showing at

this juncture to justify further briefing and consideration by the district judge." *Id.; see Tecnart, supra,* 107 F.R.D. at 285. In short, YPFB has satisfied its relatively light burden of demonstrating the existence of meritorious defenses.

## C. Prejudice to Plaintiff

There is simply no question that YPFB's delay in responding to the complaint in this case has inconvenienced Walpex. Nonetheless, this Court's concern for the inconvenience imposed upon Walpex as the non-defaulting party does not justify denying YPFB relief from default absent a showing of "substantial prejudice" by plaintiff. *See* 10 Wright, Miller & Kane, *Federal Practice and Procedure* § 2699 at 534 (1983). In this area of the law, delay alone is not a sufficient basis for establishing prejudice. *Davis v. Musler, supra,* 713 F.2d at 916.

Plaintiff's most substantial argument with regard to prejudice is that the internal turmoil at YPFB has led to extensive shifts in key personnel that may now create significant problems in discovery. Difficulties in discovery created by delay is a form of prejudice that might, under certain circumstances, justify denying a defendant relief from default. *See* 10 Wright, Miller & Kane, *Federal Practice and Procedure* § 2699 at 536–37. In the instant case, however, the difficulties plaintiff is likely to encounter in discovery may be caused less

by the delay occasioned by YPFB's default than by the difficulties that often arise in international discovery. For example, in oral argument before the Court on March 20, 1986, YPFB suggested that discovery in this action might be restricted, since Bolivian law does not recognize the application of preadjudication discovery. Whether or not this Court ultimately agrees that foreign law may properly constrict full-blown discovery in this case, YPFB's invocation of Bolivian law hardly represents an uncommon tactic by a foreign corporate defendant in international litigation.[3] In short, it was somewhat inevitable that Walpex would encounter difficulties in discovery in this litigation. The delay caused by YPFB's default, although it may exacerbate potential discovery problems, has not, by itself, substantially prejudiced plaintiff.

In any event, however, it should be possible to mitigate the prejudice suffered by Walpex without resorting to the draconian remedy of entering a default judgment (such a remedy would be truly drastic in this case, since it would result in a $2,000,000 judgment for plaintiff). In setting aside a default under Rule 55(c), this Court has inherent power to impose conditions upon defendant as a prerequisite to relief from default. *See id.* § 2700 at 537–38. Such conditions can be used to rectify any prejudice suffered by a nondefaulting par-

---

3. With regard to YPFB's tentative assertion that defendant would be violating Bolivian law by engaging in preadjudication discovery, this Court finds the recent observations of Magistrate Dolinger of this District to be of particular interest:

> [I]n those cases in which a foreign corporation or individual is a party to a lawsuit in a United States federal court, the courts have repeatedly recognized that they have the authority to compel the party to provide all necessary discovery. This authority is an incident of the court's jurisdiction over the foreign party, and extends to the requirement that the party provide discovery information obtainable only from its native country. Moreover, this authority to compel disclosure by a party from a foreign country—in either civil or criminal proceedings—is undiminished even in those cases in which the disclosure of such information may violate the laws

> of the foreign country or subject the disclosing party to civil penalties.

*International Society for Krishna Consciousness, Inc. v. Lee,* 105 F.R.D. 435, 438 (S.D.N.Y.1984) (citing cases). Judge Pollack has noted that the Second Circuit has steadily retreated from its earlier position that foreign law may operate as an absolute bar to ordering inspection or production of documents. *See S.E.C. v. Banca Della Svizzera Italiana,* 92 F.R.D. 111, 114–15 (S.D.N.Y.1981). Instead, the Second Circuit has taken "a more flexible position," *id.* at 115, adopting a comity-based balancing approach in determining whether to order production by a foreign party. *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 29 (S.D.N.Y.1984) (Keenan, J.); *see also* Restatement (Second) of Foreign Relations Law of the United States § 40 (1965) (setting forth relevant factors).

ty as a result of defendant's delay. *See id.* at 538.

### D. Plaintiff's Motion For Default Judgment

■ Based on the foregoing analysis, I find that while YPFB's default could be considered willful under the circumstances, defendant has demonstrated the existence of meritorious defenses to plaintiff's action for breach of contract. Furthermore, plaintiff has not demonstrated prejudice so substantial as to necessitate the entry of a default judgment in this case. Accordingly, subject to certain terms which this Court will impose upon YPFB as conditions for relief from default, plaintiff's motion for a default judgment is denied.

## II. CONDITIONS FOR RELIEF FROM DEFAULT

In deciding what conditions for relief from default are appropriate in this case, I have considered: the underlying facts in this dispute; the possibly willful nature of defendant's default; the amount of relief sought by plaintiff; and the potential difficulties in discovery caused by defendant's delay. Having considered these factors, I now impose the following conditions on defendant YPFB.

First, defendant is directed to file a bond with the Clerk of the Court, pursuant to Local Rule 37 of this District, in the amount of $500,000. This bond, which is to be posted no later than April 28, 1986, is intended to secure any judgment that plaintiff may obtain in this action, as well as plaintiff's costs. *See Insurance Co. of North America v. S/S Hellenic Patriot,* 87 F.R.D. 136, 139 (S.D.N.Y.1980) (Weinfeld, J.) (defendant relieved of default but upon condition that it post a surety company undertaking to secure any judgment plaintiff may obtain); 10 Wright, Miller & Kane, *Federal Practice and Procedure* § 2699 at 538 (appropriate for court to require defaulting party to provide bond to secure costs).

Second, defendant is now ordered to pay plaintiff reasonable attorneys' fees and costs on plaintiff's motion for judgment by default, said fees and costs to be determined by this Court upon submission of affidavits by plaintiff. *See Insurance Co. of North America, supra,* 87 F.R.D. at 139 (defendant ordered to pay plaintiff's counsel $750 in costs related to defendant's motion to vacate).

If YPFB does not satisfy the aforementioned conditions, this Court will entertain a renewed motion by Walpex for a default judgment.

## CONCLUSION

Plaintiff's motion for default judgment is denied, subject to the conditions imposed by this Court upon defendant YPFB. Defendant is ordered to answer the complaint or move to dismiss no later than May 7, 1986.

SO ORDERED.