**WALPEX TRADING CO., Plaintiff,**

v.

**YACIMIENTOS PETROLIFEROS FISCALES BOLIVANOS, Defendant.**

**No. 84 Civ. 4364 (PKL).**

United States District Court, S.D. New York.

May 1, 1989.

 

Lane & Mittendorf, New York City (Edward C. Cerny III, of counsel), for plaintiff.

Gibson, Dunn & Crutcher, New York City (Mitchell A. Karlan, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This extraordinary case has, over the course of several years, consumed more legal, financial and judicial resources in the litigation of essentially threshold issues than scores of cases that have been filed, resolved and forgotten in this Court during the same time period.

This is an action for breach of contract. Plaintiff Walpex Trading Co., Inc. ("Walpex") is engaged in the business of exporting goods. Defendant Yacimientos Petroliferos Fiscales Bolivianos ("YPFB") is a corporate instrumentality of Bolivia. Walpex alleges that, after an international bidding competition, it entered into a contract to sell YPFB 88,500 feet of three and one-half inch seamless steel tubing and accessories. Walpex alleges that, after partial performance, YPFB repudiated the contract.

## BACKGROUND

The tortured history of this case will not be recounted here in its entirety, but a fairly detailed statement of the factual and procedural background is necessary to understand the issues now before the Court. The present determinations are made on the basis of legal and factual arguments made in the numerous submissions by the parties since the action began.

Plaintiff initially sought a judgment by default, and has on various occasions renewed that application. By opinion dated April 16, 1986, this Court denied the default motion, based on the imposition of certain conditions upon defendant. *See, Walpex Trading Co. v. Yacimientos Petroliferos*, 109 F.R.D. 692 (S.D.N.Y.1986) ("4/16/86 Opinion"). Those conditions have been satisfied, albeit in a less than

timely fashion.[1] To the extent that plaintiff persists in seeking to secure a judgment by default, its applications are again denied.

Defendant has moved to dismiss the complaint, and asserts three separate grounds for dismissal: 1) that this Court lacks subject matter jurisdiction over the action; 2) that this Court lacks personal jurisdiction over defendant YPFB; and 3) the doctrine of *forum non conveniens* requires dismissal of the action.

Defendant initially based its motion exclusively on the inconvenience of the forum. Plaintiff opposed defendant's *forum non conveniens* motion on the record then before the Court, but made a "conditional motion," requesting that discovery or a hearing be afforded to plaintiff after, and if, defendant met its burden on the dismissal motion.

The Court determined not to resolve the *forum non conveniens* issue before it had satisfied itself that subject matter jurisdiction existed, and prior to determination of contested personal jurisdiction over defendant. *See, e.g., Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1946) ("the doctrine of *forum non conveniens* can never apply if there is an absence of jurisdiction"). The parties were therefore instructed to brief these additional threshold issues. Plaintiff responded, in part, with a request for discovery. *See,* Plaintiff's Supplemental Memorandum Dated April 7, 1987, at p. 24. By order dated June 15, 1987, the Court ordered the parties to conduct discovery limited to the jurisdictional issues, and by order dated October 19, 1987, the parties were directed to simultaneously submit any

supplemental briefing they deemed necessary. Plaintiff again responded that it had not been afforded adequate discovery. *See,* Plaintiff's Supplemental Memorandum Dated November 9, 1987. The Court then directed that certain specific interrogatories be answered fully, and the parties simultaneously submitted final additional briefs on March 27, 1989, which incorporated that discovery. From the various submissions, a fairly complete record has been developed on those facts related to the jurisdictional issues.

As noted, plaintiff is a New York corporation engaged in international commerce. YPFB is an instrumentality of the government of Bolivia, and purchases supplies for the Bolivian government's national oil program. YPFB employs approximately 7200 persons, all but twenty of whom work and reside in Bolivia. In addition to its Bolivian operations, YPFB maintains small foreign offices in Brazil, Argentina, Chile and Houston, Texas. *See,* Defendant YPFB's Supplemental Response ("YPFB Supp. Resp.") to Interrogatory 12. Of the YPFB employees who do not work and reside in Bolivia, five work at the Houston office. None of those individuals, who with one exception are Bolivian nationals, were involved with, or have any knowledge of, the events which gave rise to this lawsuit. All of YPFB's files and documents relating to the alleged contract are in Spanish, and located in Bolivia.

In addition to the transaction at issue here, YPFB has had numerous and substantial contacts with the United States, and with Walpex. *See* 9/12/86 Pirano Aff., ¶ 9. Many of its Bolivian employees regu-

---

**1.** Specifically, defendant was directed to post a one half million dollar bond, to pay certain attorney's fees to plaintiff, and to "answer or move to dismiss" the complaint. The first two conditions were eventually met, after a supplemental order by this Court dated September 9, 1986 ("9/9/86 Order"), which fixed the attorney's fees to be paid.

Defendant's initial response was to move to dismiss on grounds of *forum non conveniens.* Plaintiff interpreted this Court's 4/16/86 Opinion as requiring that defendant "join issue" by answering, or by making a specific Fed.R.Civ.P. 12 motion. Plaintiff consequently renewed its

default motion. *See,* Plaintiff's Supplemental Memorandum Dated April 7, 1987 at pp. 1–8. In its 9/9/86 Order, this Court recognized the *forum non conveniens* motion and, as noted in the following discussion, the Court subsequently directed the parties to address subject matter and personal jurisdiction issues, in addition to the convenience of the forum.

Defendant has consistently maintained that this Court lacks both subject matter and personal jurisdiction. All three issues are deemed part and parcel of the motion to dismiss, and are now before the Court.

larly travel to the United States in connection with administration of the Houston, Texas office, as well as for training, to visit United States companies, for legal arbitrations and actions, for banking and financial negotiations, and for petroleum industry conventions. *See*, YPFB Supp. Resp. to Interrog. 15. YPFB has also maintained substantial banking and financial relationships in the United States, including several large accounts to facilitate its transactions with United States suppliers. *See generally* YPFB Supp. Resp. to Interrog. 18. During the relevant period there were over 1500 substantial letters of credit issued in the United States, running from defendant in favor of United States suppliers. As indicated below, the instant transaction involved a one half million dollar letter of credit running in favor of defendant. *See*, Affidavit of F. Walter Pirano, sworn to on June 20, 1985 ("6/20/85 Pirano Aff."), at Exh. D.

In or around February of 1982, YPFB issued a public invitation (the "invitation") to bid for a quantity of seamless steel tubing, which YPFB was to purchase for use in Bolivia's oil well industry. The invitation was communicated to Walpex in New York by plaintiff's Bolivian sales agent, Compania de Representaciones Internacionales, S.R.L. ("COREIN"). 6/20/85 Pirano Aff., ¶ 3. The invitation was published, in Spanish, in major Bolivian newspapers, and called for the steel tubing to be delivered to YPFB in La Paz. Declaration of Jorge Flores Lopez, sworn to on May 23, 1986 ("Flores Decl."), ¶ 6; Declaration of Dr. Ramiro Arzabe Mercado, sworn to on May 23, 1986 ("5/23/86 Arzabe Decl."), ¶ 2.[2]

The invitation referred to certain "specifications," which COREIN evidently obtained in connection with the submission of

Walpex' bid. 5/23/86 Arzabe Decl., ¶¶ 2–3. Those specifications contain a choice of Bolivian law clause, and an apparent choice of Bolivian forum clause. *See*, Flores Decl, ¶¶ 6, 12. The specifications explicitly refer to Regulations for Acquisitions and Contracts of YPFB (the "regulations"), which require choice of Bolivian forum and law clauses. The regulations themselves have the force of law in Bolivia. Flores Decl., ¶ 7.

In April of 1982, YPFB advised COREIN, in writing, that Walpex' bid had been awarded. 6/20/85 Pirano Aff., Exh. B. On this basis, Walpex alleges that it had a valid contract to sell YPFB 88,500 feet of three and one half inch seamless steel tubing and accessories. In reliance on that contract, Walpex asserts that it entered into an irrevocable supply agreement with Vinson International Supply Company ("Vinson"). All of the activities involved in the supply of the tubing prior to its shipment were to occur in the United States. *See generally* Plaintiff's Memorandum Dated April 7, 1987 at pp. 11–12. Additionally, Walpex alleges that defendant required it to obtain an irrevocable letter of credit, issued by Chase Manhattan Bank, N.A., which named YPFB as beneficiary and guaranteed plaintiff's performance under the contract. Complaint ¶¶ 7, 9–11; 6/20/85 Pirano Aff., ¶ 7, Exh. D.

YPFB argues that no contract between it and Walpex ever existed. The specifications seem to contemplate execution of a formal written contract, and COREIN was specifically invited to appear at the offices of YPFB to "formalize the purchase order … [and to] sign the contract according to legal formality." 6/20/85 Pirano Aff., Exh. B. No additional written instrument was executed. These allegations present

---

2. The invitation, translated into English, reads as follows:

INVITATION
PUBLIC BID NO. 120–81
SUPPLY OF: PRODUCTION PIPING
Interested firms hereby are invited to present bids for the supply of:
PRODUCTION PIPING
The List of Specifications may be obtained from the Technical Consulting office of the

Materials Department, located at the YPFB building, 4th Floor, 185 Bueno Street.
Bids with the formal requirements set forth in the List of Specifications will be received in the Technical Consulting office until 5:00 p.m., March 2, 1982.
*See*, YPFB Memorandum Dated June 18, 1986, at p. 4; Affidavit of Mitchell A. Karlan, Esq., sworn to on June 17, 1986 ("Karlan Aff."), Exh. B (Spanish) and C (translation).

serious questions which may go to the merits and sufficiency of the substantive contract claim, but those issues are not presently before the Court. In the absence of a challenge to the sufficiency of the Complaint, the Court, for present purposes, assumes a valid legal claim. *See Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir.1988); *Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1365 (2d Cir. 1985), *aff'd* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986).

On June 21, 1982, COREIN wrote to YPFB, and advised YPFB that although "the Purchase Order still has not been delivered [by YPFB to COREIN] ... it was necessary to bind the material with the manufacturer when [COREIN] received notice of the award." Karlan Aff., Exh. C (Spanish), D (translation). YPFB was also notified of the steps that Walpex had taken in reliance on the bid award. *Id.* In June of 1984, upon YPFB's alleged renunciation of the agreement, plaintiff filed the present Complaint.

## DISCUSSION

### A. Subject Matter Jurisdiction.

 It is conceded that YPFB, as an instrumentality of the Bolivian government, has the status of a "foreign state," as that term is defined in 28 U.S.C. § 1603. Plaintiff asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a). That jurisdiction-conferring provision in turn refers to Sections 1605–1607 of Title 28, United States Code, which are specific exceptions to a foreign government's natural immunity under the Foreign Sovereign Immunities Act ("FSIA" or the "Act").[3] Here, as in most cases involving

the FSIA, the particular relevant provision is § 1605(a)(2).

Section 1605 provides, in part:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\* \* \* \* \* \*

(2) in which the action is [1] based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Plaintiff argues that the first and third clauses of § 1605(a)(2) confer jurisdiction in the present case. As indicated in the following discussion, the third, or "direct effect" clause, establishes subject matter jurisdiction.

### 1. Direct Effect in United States.

 The seminal case interpreting FSIA jurisdiction in this Circuit is *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir.1981), *cert. denied* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). It is beyond dispute that defendant's alleged contractual activity here is "commercial." What remains, however, are the difficult, and separate, inquiries into whether the alleged injuries are "direct" and "in the United States." *Id.* at 312. The parties vigorously dispute these aspects of the legal standard.

---

3. These provisions of the FSIA provide for statutory exercise of subject matter jurisdiction. That statutory jurisdiction is based upon the Constitution's grant of federal jurisdictional power over diversity cases in Article III, § 2, cl. 1. *See, Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300, 313 (2d Cir.1981), *cert. denied* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

Plaintiff urges that this Court should, if it fails to find jurisdiction under the FSIA, "fall back" on diversity jurisdiction. *See* Plaintiff's Supplemental Memorandum Dated April 7, 1987 at p. 17. This argument evinces a fundamental mis-

understanding of the FSIA, and ignores YPFB's status as an instrumentality of a foreign state (hereinafter generally "foreign sovereign").

If there is no subject matter jurisdiction under a specific exception in the FSIA, defendant here is immune from suit. *See* 28 U.S.C. § 1604. Constitutional diversity jurisdiction is the underpinning of statutory jurisdiction under the FSIA. Constitutional diversity is not an "alternative" to FSIA jurisdiction, and statutory diversity under 28 U.S.C. § 1332 is inapplicable, in that it does not address the immunity of this foreign sovereign defendant.

With regard to the "directness" of the injury, YPFB argues that any contract existed solely between YPFB and COREIN. *See, e.g.,* Defendant's Supplemental Memorandum Dated February 26, 1986, at p. 9. Walpex is therefore said to have no relation to the alleged contract. Defendant cites *Carey v. National Oil Corp.,* 592 F.2d 673 (2d Cir.1979), a pre–*Texas Trading* case where the Court held that cancellation of contracts between two foreign corporations did not, on those facts,[4] create a sufficiently direct injury. In *Carey,* the sole asserted basis for "direct" injury was the defendant's knowledge that the product was intended to be distributed in the United States by plaintiff. The contracts at issue in *Carey* did not involve United States corporations.

Here, in contrast, plaintiff alleges that it is not just a beneficiary, but actually a *party* to the contract. Walpex is said to have merely acted through its agent CO-REIN, and YPFB is alleged to have known at all times that it was contracting with the plaintiff, and not with COREIN. *See,* 6/20/85 Pirano Aff., Exh. B; 10/22/85 Pirano Aff., Exh. B.

*Texas Trading* itself held that "the relevant inquiry under the direct effect clause when plaintiff is a corporation is whether the corporation has suffered a 'direct' financial loss." *Id.,* 647 F.2d 312. It is clear that, if there was a contractual obligation to pay Walpex for the steel pipes, the failure to make that payment was a direct financial injury to Walpex. Clearly, under this standard, the claimed injury to the plaintiff corporation was sufficiently "direct." *Id. See also Crimson Semiconductor, Inc. v. Electronum,* 629 F.Supp. 903, 906 (S.D.N.Y.1986); *Schmidt v. Polish People's Republic,* 579 F.Supp. 23 (S.D.N.Y.1984), *aff'd,* 742 F.2d 67 (2d Cir.1984).

The "most difficult" element of the direct effect clause involves the phrase "*in*" the United States." *Texas Trading,* 647 F.2d at 312 (emphasis added). In *Texas Trading* the payment of money was to

occur in the United States, and the plaintiff was a United States corporation. These two factors alone were sufficient to establish an effect "in" the United States. *Id* at 312. The plaintiff here is a United States corporation, but the parties disagree as to where payment of the contractual obligation was to occur. Plaintiff argues that the reasonable inference is that payment was to be made in dollars in this country, while defendant argues that the nature of the parties' dealing indicates that payment was to be made in Bolivia.

The *Texas Trading* Court left "open" the question of whether a United States corporation incurs a direct effect in the United States when it is injured overseas. *Id.,* 647 F.2d at 312, n. 35. YPFB seeks to place the present transaction within that postulated niche, and then argue that the "open" question should be resolved against a finding of jurisdiction. The Court is not persuaded by this argument. If the *Texas Trading* dictum allows a jurisdictional exception for foreign sovereigns who injure United States corporations abroad, that exception clearly does not apply to situations, like this one, where United States banking resources are utilized for the transaction. *See, Reale International, Inc. v. Federal Republic of Nigeria,* 562 F.Supp. 54, 57 (S.D.N.Y.1982) (jurisdictional exception applies only to "an overseas payment by a foreign state to an American corporation in such a manner that does not involve the use of American banking resources.")

The Second Circuit in *Texas Trading* was emphatic in its statement that "Congress in the FSIA certainly did not intend significantly to constrict jurisdiction; it intended to regularize it.... No rigid parsing of § 1605(a)(2) should lose sight of this purpose." *Id.,* 647 F.2d at 313 (citation omitted). The present case presents a foreign sovereign's alleged breach of a contract with a United States corporate plaintiff. The performance of the contract was to occur primarily in this country, and the foreign defendant utilized United States

---

**4.** The Second Circuit subsequently observed that, "In *Carey,* we decided that a direct effect can arise not only from a tort, but from cancel-

lation of a contract for the sale of oil as well." *Texas Trading,* 647 F.2d at 312 (citation omitted).

banking resources to facilitate payment. Placing undue weight upon the disputed locus of actual payment would constitute the precise sort of myopic analysis that the Second Circuit counseled against in *Texas Trading*, 647 F.2d at 313.

This Court is persuaded that the third clause of § 1605(a)(2) amply supports subject matter jurisdiction, and it is therefore unnecessary to consider the first clause of § 1605(a)(2), which plaintiff argues as an alternative basis of subject matter jurisdiction. *See, e.g., Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1114 (S.D.N.Y.1982) (jurisdiction under first clause found where contract "conditioned on plaintiff's promise to perform a substantial part of the contract in the United States.")

### B. Personal Jurisdiction.

■■■ Personal jurisdiction over foreign sovereign instrumentalities under the FSIA involves a scrutiny distinct from the subject matter jurisdiction inquiry above. Personal jurisdiction cannot be automatically based upon a finding of subject matter jurisdiction; Congress did not have the authority to override the constitutional due process constraints underlying personal jurisdiction when it drafted the FSIA. *See generally, Texas Trading*, 647 F.2d at 307. *See also International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A foreign sovereign instrumentality is afforded the same due process safeguards that are extended to natural persons. *Texas Trading*, 647 F.2d at 313.

### 1. General and Specific Jurisdiction.

YPFB strenuously argues that only the contacts specifically related to the transaction at issue are relevant in determining whether the Court's exercise of personal

jurisdiction under the FSIA is constitutionally permissible. *See e.g.,* Defendant's Supplemental Memorandum Dated November 9, 1987, at p. 9.[5] This contention must be rejected, both as a matter of constitutional due process and statutory interpretation.

■■■ As a constitutional matter, specific jurisdiction may be found where a transaction by a foreign sovereign involves sufficient directly related contacts with this country.[6] General jurisdiction arises where there are sufficient contacts, whether related or unrelated to the transaction, to satisfy the due process constraints embodied in *International Shoe*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. More substantial contacts are required, of course, to establish general jurisdiction. As the Supreme Court has stated,

> Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum state, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the state and the foreign corporation.

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citation omitted). Clearly, the unrelated contacts of defendant here may be evaluated in determining possible general jurisdiction.

■■■ Similarly, statutory personal jurisdiction under the FSIA is not limited to specific jurisdiction, based only on related activity. Such a limitation on the direct effect clause of § 1605(a)(2) would, contrary to Congressional intent, seriously constrain the reach of that exception. *See Meadows v. Dominican Republic*, 628 F.Supp. 599, 605 (N.D.Cal.1986), *aff'd* 817

---

**5.** Defendant relies primarily on *dicta* from *Exchange Bank of Chicago v. Empresa Minera, Etc.*, 595 F.Supp. 502, 505 (S.D.N.Y.1984). Personal jurisdiction was not at issue in that case, as the Court found no subject matter jurisdiction. To the extent that the *dicta* from that opinion might be interpreted as excluding the possibility of general personal jurisdiction under the Constitution or the FSIA, it will not be followed, for the reasons set out below.

**6.** Under the FSIA, contacts with the entire United States, as opposed to a particular state or forum, are relevant. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 490, 103 S.Ct. 1962, 1969, 76 L.Ed.2d 81 (1983) (FSIA is only limited by "some form of substantial contact *with the United States.*") (emphasis supplied); *Texas Trading*, 647 F.2d at 314 ("the relevant area in delineating contacts is the entire United States, not merely New York").

F.2d 517 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). Additionally, statutory personal jurisdiction under the FSIA is concurrent with the outer limits of constitutional due process, *Texas Trading,* 647 F.2d at 313–314, and that range clearly encompasses general jurisdiction.

### 2. Jurisdiction Over YPFB.

 Given the framework outlined above, it is clear that there could be no *specific* personal jurisdiction over the defendant here. The invitation was not published in the United States, no YPFB employee ever traveled to the United States in connection with this transaction, there is no evidence of direct communications with the United States concerning this transaction, and the few employees permanently present in this country were not involved with the alleged contract. *See,* Defendant's Second Supplemental Memorandum Dated March 27, 1989, at p. 2.

 The question of general jurisdiction over YPFB, however, remains. The Second Circuit outlined an approach to the jurisdictional examination in *Texas Trading,* 647 F.2d at 314. That approach involves at least four separate inquiries: 1) the extent to which defendant has availed itself of the privileges of American law; 2) the extent to which litigation in the United States is foreseeable; 3) the inconvenience to defendant of litigating in the United States; and 4) the countervailing interest of the United States in hearing the suit. *Id., citing, World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 297, 100 S.Ct. 559, 564, 567, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158. *See also, Helicopteros Nacionales, supra* 466 U.S. at 414–415, 104 S.Ct. at 1872.

In *Texas Trading,* these inquiries were satisfied where the defendant was found to have sent its employees to this country for training, to have kept large cash balances here, to have maintained a checking account in a bank here, to have made a regular practice to advise letters of credit through a bank here, and to have employed that bank as the regular means of paying its bills worldwide. *Id.,* 647 F.2d at 314–15. Again, the analysis here goes beyond the specific transaction which forms the basis of this lawsuit; the determination to be made is whether YPFB is adequately present in this Country to support general jurisdiction.

The supplementary discovery ordered by the Court is particularly relevant here. *See generally,* YPFB Supp. Resp. to Interrog. 15, 16 and 18. It is apparent that defendant regularly and significantly availed itself of the privileges of United States banking and financial laws. Defendant also maintains numerous physical contacts in this country through travel by employees, ranging from the President of YPFB to oil field engineers. The Houston, Texas office is undeniably a permanent presence, although a relatively minor one. Here, as in *Texas Trading,* 647 F.2d at 314, defendant has sufficiently availed itself of the privileges of this country's laws.[7]

Examination of the foreseeability of litigation involving YPFB is a closer question. The bidding and contracting procedures followed in the instant case are typical of YPFB's practice, in that they are specifically structured to avoid foreign litigation. Balanced against these bidding procedures,

---

**7.** This is true even considering the choice of law and forum clauses, which defendant argues are controlling. Clearly, "choice of law provisions should not be ignored when making jurisdictional determinations." *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 367 (2d Cir.1986) (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In the present posture of this case, however, it is not entirely clear that the choice provisions in the specifications and regulations are part of the "contract" upon which plaintiff is suing. Additionally, although such provisions are relevant to the inquiry into whether a defendant purposefully availed itself of a forum's laws, they are but one factor to be evaluated.

however, are the substantial contacts and systematic financial dealings YPFB has with this country. Defendant clearly did not expect, and hoped to avoid, this particular lawsuit. It cannot be said, however, that, in light of the entirety of its contacts, YPFB would never anticipate being involved in litigation in the United States.

The inconvenience to defendant also presents a troublesome inquiry. As evidenced by the history of this action, and the discovery accomplished so far, if this case goes to trial there will be some degree of inconvenience to defendant, as well as to plaintiff and the Court. The discovery undertaken to date, however, may well have been broader in scope, and more extensive, than limited discovery actually focused on this single transaction. The Second Circuit has noted that "[e]very modern transnational commercial contract presents problems of adjudicatory cost." *Texas Trading*, 647 F.2d at 315. The argued inconvenience to defendant here does not, itself, present a violation of due process. Again, the frequent presence of employees and officers of defendant in this country also militates against a finding of impermissible inconvenience.

Finally, the United States has a strong interest in hearing this lawsuit. The FSIA represents an explicit Congressional endorsement of the policy of providing access to United States plaintiffs allegedly injured by the commercial actions of foreign sovereigns. *Texas Trading*, 647 F.2d at 315; *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1118 (S.D.N.Y.1982). Plaintiff's interest in obtaining "convenient and effective relief" cannot be denied. *See e.g., World Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564; *Texas Trading,* 647 F.2d at 315.

In sum, defendant YPFB is substantially and continuously present in the United States for procurement of supplies and services vital to its business, and for the financing of that business and those purchases. It maintains an office and substantial financial resources in this country, and frequently sends its representatives here. The aggregate of these contacts indicates that defendant is sufficiently present in the United States to be subject it to the personal jurisdiction of this Court, and such an exercise of jurisdiction "does not offend 'traditional notions of fair play and substantive justice.'" *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158. (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

### C. Forum Non Conveniens.

■■■■■ The final issue before the Court is the matter first raised, namely whether the action should be dismissed under the common law doctrine of *forum non conveniens*. Defendant here bears a heavy burden; "in any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience defendant may have shown." *Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1946). This is especially true in cases involving resident plaintiffs who choose their home forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981) ("distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified").

Any *forum non conveniens* inquiry has to begin with analysis of the factors set out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See also, Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6, 70 L.Ed.2d 419 (1981).[8] The Supreme Court has emphasized the flexibility with

---

**8.** The factors relating to private interests of the litigants include: relative ease of access to sources of proof; cost of obtaining testimony from, and availability of compulsory process for, unwilling witnesses; and other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors bearing on the issue include administrative difficulty flowing from court congestion, interest in having local controversies decided locally, avoidance of unnecessary problems with conflict of laws or application of foreign laws, and unfairness in burdening citizens in an unrelated forum with jury duty. *Piper Aircraft, supra,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258.

which the District Court must approach a *forum non conveniens* determination, and consequently there are no specific circumstances which would require either a grant or denial of the remedy. *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. at 843; *Piper Aircraft, supra,* 454 U.S. at 249, 102 S.Ct. at 262 (*citing Williams v. Green Bay & Western R. Co.,* 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1946)). Resolution of the issue in the present case is not without its difficulties; strong arguments can be made that both potential forums are seriously inconvenient for one or the other of the parties. In considering and balancing the competing concerns, however, the Court is not persuaded that dismissal of the action is justified.

Plaintiff's United States citizenship and residence, as noted above, is a factor which weighs significantly against dismissing on *forum non conveniens* grounds. *See, e.g., Olympic Corporation v. Societe Generale,* 462 F.2d 376, 378 (2d Cir.1972); *Thomson v. Palmieri,* 355 F.2d 64 (2d Cir.1966). Although it is not to be accorded talismatic significance, *see Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 156 (2d Cir.) (*en banc*), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1981), plaintiff's residence is a factor which "augments ... the weight which normally would be given to the plaintiff's choice of forum." *Fiacco v. United Technologies Corp.,* 524 F.Supp. 858, 861 (S.D.N.Y.1981).

With regard to the private interest factors enumerated in *Gulf Oil,* plaintiff has shown that much of its own proof is accessible in this jurisdiction. *See,* Plaintiff's Memorandum Dated September 12, 1986, at p. 13-14. Although certain witnesses are allegedly in Bolivia and no longer employed by YPFB, it is not apparent that these will necessarily be "key" witnesses, *cf. Coface v. Optique du Monde,* 521 F.Supp. 500, 507 (S.D.N.Y.1980), that deposition procedures will be unavailable, or that such non-party witnesses will be unwilling or unable to testify. *See, Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1121 (S.D.N.Y.1982). Plaintiff has additionally asserted that it plans to call a number of New York witnesses.

*Dale Metals Corp. v. Kiwa Chem. Industry Co., Ltd.,* 442 F.Supp. 78 (S.D.N.Y. 1977).

Defendant asserts that Bolivian law will apply, but it is well settled that application of foreign law is not itself a reason to apply the doctrine of *forum non conveniens. See, e.g., Manu International, S.A. v. Avon Products,* 641 F.2d 62, 67 (2d Cir.1981); Fed.R.Civ.P. 44.1. Finally, defendant questions the enforceability of any judgment which plaintiff might obtain. *See* Affidavit of Sergio Palacios de Vizzio, sworn to on June 10, 1986 ("Palacios Aff."), ¶ 26. While plaintiff may well face some difficulty in satisfying a judgment, if it ultimately recovers one from this Court, that uncertainty does not presently rise to a level sufficient to require dismissal. *See,* Plaintiff's Memorandum Dated September 12, 1986, at p. 17.

The severe inconvenience and prejudice which plaintiff would incur if it were forced to litigate in Bolivia cannot be denied. *See* Plaintiff's Memorandum Dated September 12, 1986, at p. 4-5; 9/12/86 Pirano Aff., ¶¶ 13-15. The comparative financial resources of the parties additionally indicate that defendant is in a better position to protect its interests in this forum than plaintiff would be in Bolivia.

Analysis of this case in light of the public interest factors set out in *Gulf Oil* does not alter the conclusion that litigation in this forum is permissible. The controversy is not exactly "localized" with respect to either Bolivia or New York. *See,* Plaintiff's Memorandum Dated September 12, 1986, at p. 17-18. This Court is all too aware of congestion and concomitant administrative difficulties in this litigious forum, but that congestion does not make dismissal appropriate. The parties vigorously dispute the adequacy of Bolivia as an alternate forum. Considering the totality of the circumstances in this case, that issue is not controlling, and its resolution is not strictly necessary. The Court notes, however, that in this action defendant has itself relied upon alleged civil and political chaos in Bolivia to justify its failure to make timely responses.

**394**

*See* Affidavit of Dr. Luis Alipaz, sworn to on October 8, 1985, ¶ 6.

In sum, the defendant's motion to dismiss on *forum non conveniens* grounds is denied. This Court is not unaware of, or insensitive to, the difficulties that lie ahead in this litigation. Despite defense counsel's professional and diligent efforts, the circumstances and distances involved here have required that the Court demonstrate an unusual degree of flexibility and tolerance. Hopefully, the outer limits of that patience will not be tested. As indicated above, however, the difficulty presented by this litigation does not justify dismissal.

Finally, in its March 27, 1989 submission, plaintiff made a request for recompense under Fed.R.Civ.P. 11. This Court has previously noted that applications under Rule 11 can themselves be baseless and frivolous. *Pompano–Windy City Partners v. Bear Stearns & Co.*, 698 F.Supp. 504, 508 (S.D.N.Y.1988). Plaintiff's request warrants no further discussion; it is hereby denied in its entirety.

### CONCLUSION

This Court has subject matter jurisdiction over this action, and personal jurisdiction over the defendant. Defendant's motion to dismiss on grounds of *forum non conveniens* is denied. Defendant is ordered to answer, or otherwise join issue via an appropriate motion under the Federal Rules of Civil Procedure, on or before July 14, 1989.

SO ORDERED.