**WALPEX TRADING CO.**, Plaintiff,

v.

**YACIMIENTOS PETROLIFEROS FISCALES BOLINIANOS,**
Defendant.

**No. 84 Civ. 4364 (DAB).**

United States District Court,
S.D. New York.

June 26, 1995.

Edward C. Cerny, III and John LoBosco, Lane & Mittendorf, New York City, for plaintiff.

Mitchell A. Karlan and Robert E. Malchman, Gibson, Dunn & Crutcher, New York City, for defendant.

## OPINION

BATTS, District Judge:

## I. INTRODUCTION

This case originated as a breach of contract action brought by Walpex Trading Company ("Walpex"), a New York corporation engaged in international exports, against Yacimientos Petroliferos Fiscales Bolivianos ("YPFB"), an instrumentality of the Bolivian government which purchases supplies for that country's national oil program, with jurisdiction founded on section 1605(a)(2) of the Foreign Sovereign Immunities Act, and 28 U.S.C. § 1330(a). By Opinion dated April 21, 1992, Judge Leisure granted summary judgment for YPFB on the breach of contract claim. The Court declined, however, to grant summary judgment on the bad faith/equitable estoppel theory of the case finding that "the evidence clearly raises disputed issues of material fact under Bolivian law [1] concerning whether YPFB acted in bad faith and caused injury to Walpex." *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 789 F.Supp. 1268, 1278 (S.D.N.Y.1992) ("*Walpex IV*"). Judge Leisure also found [2] that before Walpex could support a recovery for pre-contractual bad

---

1. The Court previously determined that Bolivian substantive law governs this action. *See Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 756 F.Supp. 136, 140 (S.D.N.Y.1991) ("*Walpex III*").

2. Judge Leisure also noted that this case has been pending for over a decade and has "con-

sumed more legal, financial and judicial resources in the litigation of essentially threshold issues than scores of cases that have been filed, resolved and forgotten in this Court during the same time period," *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 712 F.Supp. 383, 385 (S.D.N.Y.1989) (*Walpex II*).

faith, Walpex would have to "overcome hurdles of contributory negligence and assumption of the risk." *Id.*

Having completed discovery on the issues of bad faith, contributory negligence, and assumption of the risk, YPFB again moves for summary judgment. For the reasons set forth below, summary judgment is granted.

## II. FACTUAL BACKGROUND

The factual underpinnings of this action are essentially undisputed and have been described in *Walpex IV* and *Walpex II*. In February 1982, YPFB publicly invited bids[3] for the supply of tubing to be used by the Bolivian oil industry. Section 2.3.7 of the List of Specifications, referenced in the invitation, required the successful bidder to submit an irrevocable letter of credit for 10% of the purchase price as performance bond.

Walpex received YPFB's invitation for bids and the requisite Specifications through its Bolivian agent, Compania de Representaciones Internacionales, S.R.L. ("COREIN"). On April 7, 1982, YPFB advised COREIN, in writing, that Walpex had been awarded the bid, and that COREIN should come to YPFB's offices in La Paz to sign the formal contract. *See* YPFB 3(g) Statement, at ¶ 7. On April 12, 1982, COREIN contacted YPFB to complete a purchase order as well as other formalities contemplated by the April 7, 1982, award. *See* Walpex 3(g) Statement, at ¶ 11. YPFB did not issue the purchase order. In fact, neither a purchase order nor a formal written contract was ever executed by YPFB.

On May 10, 1982, Walpex established an irrevocable letter of credit with Chase Manhattan Bank, N.A., in the amount of $199,312.15, in YPFB's favor. *See* Piraino Dep. Exh. 5. It also obtained documents necessary for COREIN to execute the contract on its behalf. On May 18, 1982, without notifying YPFB or COREIN, Walpex entered into an irrevocable contract for the supply of the pipe with Vinson International ("Vinson"). *See* Piraino Dep.Exh. 6.

YPFB prepared a purchase order, dated June 3, 1982, incorporating the terms proposed by Walpex. Subsequently, however, YPFB informed Walpex that Bolivia was experiencing economic problems and that it was having difficulty obtaining funding from the World Bank to pay for the pipe. *See* Piraino Dep. at 97–99, Navarro Dep. at 35. Thus, despite requests, the purchase order was not made available to COREIN for signature. *See* Walpex Memorandum at 8. On June 16, 1982, almost a full month after Walpex had executed the Vinson contract, COREIN advised Walpex not to undertake any commitment until it had received the confirmed purchase order. *See* Piraino Dep. Exh. 10.

By letter dated June 30, 1982, YPFB stated to COREIN that it could not deliver its letter of credit because of financial restrictions imposed by the Central Bank of Bolivia. *See* Navarro Dep.Exh. 4. Following repeated requests by YPFB to Walpex for extensions of time for YPFB to perform, on January 11, 1983, YPFB's Director of Materials informed COREIN that YPFB's Procurement Department was suspending acqui-

---

**3.** The invitation appeared in Spanish in various Bolivian newspapers. As translated into English, it read:

INVITATION
PUBLIC BID NO. 120–81
SUPPLY OF: PRODUCTION PIPING
Interested firms are hereby invited to present bids for the supply of:
PRODUCTION PIPING
The List of Specifications may be obtained from the technical consulting office of the Materials Department, located at the YPFB building, 4th Floor, 185 Bueno Street.
Bids with the Formal requirements set forth in the List of Specifications will be received in the Technical Consulting office until 5:00 p.m., March 2, 1982.

The Specifications referred to in the invitation provided in pertinent part:
Paragraph 1.0:
The bidding is ruled by the Regulations for Acquisitions and Contracts of YPFB, approved by Decree law 16857 of July 20, 1979 ("Regulations") and by related norms in force in the Country.
Paragraph 2.3.3:
The presentation of a bid implies the bidder's submission to the legal system cited in paragraph 1.0 and to all laws in force in the country, as well as to all requirements in this List of Specifications. *Walpex IV,* at 1270–71.

sition of the pipe because of lack of money. YPFB permanently cancelled acquisition of the pipe on July 28, 1983, stating that it was unable to obtain financing for the project from the World Bank. *See* Piraino Dep.Exh. 22.

## III. SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). The burden is on the moving party to demonstrate that no genuine issue of material fact exists. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994). Consequently, when deciding a motion for summary judgment, a court must "resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion." *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2d Cir.1986).

■ Summary judgment may be appropriate if the moving party can show that little or no evidence may be found in support of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment may also be appropriate if no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight that no genuine issue of material fact exists. *Gallo,* 22 F.3d at 1224.

## IV. ANALYSIS

■ The issue remaining in this case is whether YPFB incurred liability by its alleged failure to exercise good faith in its precontractual negotiations with Walpex. Article 465 of the Bolivian Civil Code, translated into English, provides as follows:

> In the preliminary stages of negotiation and in the formation of the contract the parties shall conduct themselves in good faith and shall compensate for harm caused by negligence, imprudence or omission in giving notice of the causes that may void the contract. Bolivian Civil Code Art. 465.

This Article establishes a general duty of good faith and fair dealing in contractual negotiations. *See* Garro Aff. at ¶ 21. Under Bolivian law, however, good faith is presumed in all contracts. *See* Commercial Code of Bolivia Article 803; Palacios de Vizzio Dec. at ¶ 21. Thus, absent factors that may operate to void an otherwise valid contract[4], a breach of Article 465 requires a showing of bad faith or *dolo*. *See Walpex IV,* at 1275; Palacios de Vizzio Dec. at ¶ 16.

*Dolo* is defined as "any kind of trick, design or artifice used to deceive another [and as] malicious intent to improperly seek a personal benefit or the injury of another by means of any act or contract and by resorting to tricks, artifice or the ignorance of others." *See* Palacios de Vizzio Dec. at ¶ 20, *quoting,* G. Cabanellas, *Diccionario de Derecho Usual* 742 (ed. Heliasta S.R.L., Buenos Aires 1976). Similar to fraud under New York law, *see Leucadia, Inc. v. Reliance Ins. Co.,* 864 F.2d 964, 971 (2d Cir.1988) (plaintiff must prove fraud by clear and convincing evidence), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989), a plaintiff attempting to prove *dolo* under Bolivian law must do so by "convincing the judge". *See* Palacios de Vizzio Reply Dec. at ¶¶ 16–17.

Walpex argues that by failing to execute the final contract and by not informing Walpex of the fact that there was no binding agreement at the time the bid was awarded, YPFB breached its obligations under Article 465. Coupled with the fact that YPFB should have known that Walpex would enter into a supply contract in reliance on the bid award, Walpex states that YPFB acted with *dolo* and thereby exposed itself to pre-contractual liability under Bolivian law. Walpex

---

4. Negligence, imprudence or omission is sufficient to incur liability pursuant to the second clause of Article 465 where one party fails to inform the other of causes for voiding the contract. This clause is inapplicable to the facts at bar, as no contract was ever formed and YPFB's alleged omissions did not relate to facts that would void a future contract. *See* Palacios de Vizzio Reply Dec. at ¶¶ 11–15.

argues that YPFB should pay its damages, which consist of the amount expended to procure the letter of credit and the amount Walpex is obligated to pay Vinson pursuant to the supply contract entered into on May 18, 1982. There is no evidence in the record, however, that YPFB injured Walpex through actions taken in bad faith or that YPFB intended to deceive Walpex for its own benefit.

To the contrary, YPFB informed Walpex of the economic difficulties Bolivia was facing and that these difficulties were making it impossible for YPFB to execute the purchase order. *See* Hornsby Dep. at 45. As early as April 12, 1982, nearly one month before Walpex obtaining the letter of credit from Chase and over one month before it signed the contract with Vinson, COREIN had sought and was refused a purchase order by YPFB. Walpex cannot now claim that it was not aware of a delay involved in executing the YPFB contract before it obtained the letter and committed to purchasing the pipe.

Indeed, the evidence presented to the Court suggests that, but for the problems YPFB encountered in obtaining World Bank financing, it would have executed a contract with Walpex. *See* Navarro Dep. at 37. Walpex's assertion that YPFB's Technical Board decided as early as April 29, 1982 to suspend purchase of the pipe is without merit, as that committee acts only in an advisory capacity. *See* Rivero Reply Dec. at ¶ 5. Thus, YPFB's ultimate failure to enter into a contract with Walpex did not amount to an absence of good faith which would expose it to liability.

Nor did YPFB's purported failure to stop Walpex from contracting with Vinson amount to actionable fraud. At the heart of Walpex's damages claim is the irrevocable supply contract it unilaterally entered into with Vinson. Nowhere in the bid specifications or in any communication between Walpex and either YPFB or COREIN was it stated that an irrevocable supply contract was a condition to YPFB's executing a contract. There is no evidence to suggest that Walpex notified YPFB before it negotiated and entered into the irrevocable contract with Vinson; to the contrary, the evidence suggests that YPFB was not aware of the existence of the Vinson contract until almost one month after it was signed. *See* Piraino Dep.Exh. 10, 11; Hornsby Dep. at 47–48. Further, Walpex's assertion that the supply contract was a necessary prerequisite to its obtaining a letter of credit is belied by the fact that Walpex obtained the letter prior to the execution of the supply contract. Walpex's claim that YPFB should have known that Walpex would enter into an irrevocable supply contract is neither supported by the evidence nor does it rise to the level of actionable bad faith under Article 465.

■ Indeed, such a claim places the responsibility for Walpex's current plight on the wrong party entirely. For, in addition to its inability to show bad faith or *dolo* on the part of YPFB, Walpex is unable "to overcome hurdles of contributory negligence and assumption of risk." *Walpex IV*, at 1279. Article 348(II) of the Bolivian Civil Code, translated into English, provides that:

> There is no recovery for those damages that the plaintiff could have avoided by using ordinary diligence. Bolivian Civil Code Art. 348(II).

This provision in the Bolivian Code operates to bar recovery for a plaintiff whose failure to use ordinary care causes its own damages. *See* Palacios de Vizzio Dec. at ¶ 36.

Walpex did not use ordinary diligence when it, without prior notice to YPFB, executed the irrevocable supply contract with Vinson before obtaining either a purchase order or a finalized contract with YPFB.

■ Walpex's argument that it was operating under the assumption that a binding contract existed is to no avail. It is charged with knowing that Bolivian law requires that a contract involving an agency of the Bolivian government requires a notarized, witnessed writing recorded as a public deed. *See* Palacios de Vizzio Reply Dec. at ¶ 15, 20. Moreover, Walpex's sole reliance on the April 7, 1982, bid award as the basis for entering into the Vinson contract shows an absence of ordinary diligence. In light of the severe economic problems in Bolivia, YPFB's failure to execute a purchase order, and the fact that the supply contract was not necessary for the finalization of the YPFB contract, Walpex's

actions were not reasonable. The Bolivian law equivalent of assumption of the risk and contributory negligence codified in Article 348(II), therefore, operates to bar Walpex from recovery.

## V. CONCLUSION

For the reasons set forth above, summary judgment is granted.

The Clerk of the Court is hereby ordered to enter judgment for the Defendant.

SO ORDERED.